F. Harold Johnston, Executor of the Estate of F. M. Johnston, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 79029. Promulgated November 26, 1935.

*William P. Smith, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

ARUNDELL: Section 44 (d) of the Revenue Act of 1928 provided for the recognition of gain or loss on the transmission of installment obligations upon the death of the holder, and that enactment has been consistently held valid. *Alexander M. Crane et al., Executors*, 30 B. T. A. 29; affd., 76 Fed. (2d) 99; *Provident Trust Co. of Philadelphia, Executor*, 29 B. T. A. 374; affd., 76 Fed. (2d) 810; *Nuckolls* v. *United States*, 76 Fed. (2d) 357. The same provisions were enacted in section 44 (d) of the Revenue Act of 1932, with an added sentence [1] providing in substance that there need be no recognition of gain or loss to the decedent if a bond is filed to assure the return as income by the recipients of the installment obligations of the same amount as the decedent would have returned upon liquidation of the obligations. This provision was added to the Revenue Bill of 1932 by the Senate Committee on Finance for the express purpose of alleviating hardships resulting to the estates of decedents under section 44 (d) of the Revenue Act of 1928. The report of the Finance Committee is set out in the margin.[2] Being a relief provision, the construction should be liberal in favor of the taxpayer. *Bonwit Teller & Co.* v. *United States*, 283 U. S. 258. This enactment is but part of a series of regulations and statutes designed to give relief to taxpayers who operate on the installment basis. *Burnet* v. *S. & L. Building Corporation*, 288 U. S. 406. And it has been held that following the enactment of the Revenue Act of 1926, which first

---

[1] This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment.

[2] Your committee has added to section 44 (d) a provision that the subsection shall not apply to the transmission at death of installment obligations if a bond is filed in the proper amount conditioned upon the return as income by any person receiving any payment on account of such obligations of the same proportion of such payment as would have been returnable by the decedent had he lived and received the same. It has come to the attention of your committee that considerable hardship sometimes occurs in the application of eixsting law to cases of decedents who die possessed of substantial amounts of installment obligations. In such cases the entire amount of the profit represented by the obligations must be reported as income in the return of the decedent for the year of his death. Your committee believes that if, for example, the estate of the decedent or his next of kin or legatees file a bond to return as income the proper proportion of the payments received by them on account of the installment obligations received from the decedent, the revenue will be properly protected. This section is accordingly amended to provide for such procedure. Rept. 665, 72d Cong., 1st sess., p. 21.

gave statutory sanction to the installment basis of reporting income, it was an abuse of discretion on the part of the Commissioner to refuse to receive an amended return whereby the taxpayer sought to change from the installment basis to the deferred payment basis of reporting income, even though there was no statutory authority for amended returns. *Morrow, Becker & Ewing, Inc.* v. *Commissioner*, 57 Fed. (2d) 1. In that case the taxpayer's original return showed a substantial net income, whereas the amended return showed a net loss. The court said:

In view of the radical changes in the law, of which the petitioner had scant notice, if any, in fairness and justice to the taxpayer the returns should have been received and considered. Taxes are assessed on income and not on honest mistakes of the taxpayer. It was the duty of the Commissioner to do nothing arbitrary or unreasonable that would deprive petitioner of rights created by the new law and the regulations thereunder. It was a breach of discretion on the part of the Commissioner not to receive the amended return from [*sic*] 1925 under the circumstances disclosed.

The petitioner in this case is in a more favorable position than was the taxpayer in the *Morrow, Becker & Ewing* case. This petitioner is not seeking any diminution in the amount of income reported or taxes paid. True, by failing to comply literally with the statute and regulations the petitioner did not report all the income of his decedent, but he did thereafter attempt to comply by offering to file a bond, and prior to the hearing of these proceedings all the income was reported by the recipients of the installment obligations. The effect of sustaining respondent's position would be to assert a deficiency against this petitioner and then require refunds to those who have heretofore paid the tax. Such complicated procedure may be justified where there is clear statutory warrant for it, but it is not present here.

If a rule of strict and literal compliance with the respondent's regulations is to be applied, it should go all the way. The regulations, article 355 of Regulations 77, provide for the filing of a bond on form 1132 at the time of filing the final return of a decedent where the unrealized gain on installment obligations is to be reported by beneficiaries or distributees. Form 1132 did not become available until after the time for filing the decedent's return, and so literal compliance was impossible. Respondent argues that petitioner could have applied for the privilege of filing a bond or for an extension of time. But article 355 does not provide for the filing of an application for the privilege of filing a bond and any such application would not have been a strict compliance with the regulations. We do not understand that there is any duty on the part of a taxpayer to delay filing a return or to ask for an extension of time to file because the respondent's office is late in furnishing a

form which is not a necessary part of the return. As matters stood at the time the return was filed on March 15, 1933, exact compliance with the regulations was impossible. The law does not require the impossible.

Summarizing, the petitioner could not comply with the regulations when filing the return; thereafter he did endeavor to comply, but his offer was refused by the Commissioner; all the income at the bottom of these proceedings has been reported; and nothing is to be gained by the procedure now proposed by the respondent. We hold that the respondent's refusal to accept the offer of a bond was arbitrary and that the determination of the deficiency was unwarranted.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting: The decision of a hard case, upon apparent equitable grounds, frequently results in bad law. In my judgment, this is such a case, and the result reached in the majority opinion is wrong.

This Board has no equity powers. *Northport Shores, Inc.*, 31 B. T. A. 1013.

Our concern here is the legal income tax liability, for 1932, of the present petitioner—*nothing else*.

The controlling statute, itself, here, not any regulation, makes the filing of a bond the condition precedent to the relief petitioner seeks. The enjoyment of that relief depends wholly upon compliance with that statutory condition precedent. *Rock Island, A. & L. R. R. Co.* v. *United States*, 254 U. S. 141.

As construed by the authorized regulation, obviously actual compliance was absent and literally impossible. But, it is said the present record discloses substantial compliance with the statute as construed by the pertinent regulation.

That regulation was clearly reasonable. It is not attacked in the majority opinion. It was promulgated by express statutory authority. So, I think, the rule adopted by the Board in reference to a somewhat comparable situation, in *Alfred E. Hamill*, 30 B. T. A. 955, and cited with approval many times since, is applicable here. This Board there said:

* * * Fortified with such a clear sanction in the statutory grant of power, the administrative determination in such a case must survive all but the strongest attack. Short of being arbitrary or capricious or based on a clear demonstration of error, the determination in any single instance ought not to be disturbed. This is not a matter of jurisdiction, for the Board clearly has the power of review, *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220, but is rather an attitude of the Board in the exercise of its jurisdiction not to inter-

fere lightly with general administrative matters which the Congress has entrusted to the Commissioner's discretion.

The inquiry here is not whether, if we were exercising *our* discretion on the acceptance or rejection of the proffered bond, *we* would have accepted it under the circumstances. We do not have that discretionary function. Nor is our inquiry whether the Commissioner's *acceptance* of the tendered bond would have exceeded his discretion. Our function is much more narrow. That function is to decide *only* whether the discretion, clearly existing in the Commissioner, was here exercised by him in an arbitrary and capricious manner.

The record discloses the following relevant facts:

1. February 2, 1925—Installment sale made.
2. February 5, 1932—Decedent died.
3. June 6, 1932—Revenue Act of 1932 approved (retroactive to January 1, 1932, as to the pertinent provision).
4. February 9, 1933—Regulations 77 promulgated.
5. February 27, 1933—Regulations 77 released to public.
6. March 15, 1933—Return filed for decedent.
7. April 26, 1933—Form of bond first became available.
8. About March 15, 1934—Legatees reported income on first note.
9. May 1, 1934—Executor first learned of provisions for bond requirement and applied for Form 1132, the prescribed bond.
10. June 4, 1934—Executor's application to file that bond denied.
11. March 13, 1935—Deficiency letter mailed.
12. About March 15, 1935—Legatees reported income on last two notes.

The majority opinion holds these facts constituted a compliance with the statute and regulation, *so substantial*, that the Commissioner was guilty of an abuse of his discretion in refusing to accept the bond here involved, which was tendered almost two years after the statute permitting its filing became law, and over one year after the regulations authorized by that law were promulgated and the form of the bond there prescribed became available to the public. And this conclusion is reached, though the taxpayer did nothing even in an attempted compliance with the statute or regulation until that late date, *only because*, until a few days before the bond was actually tendered, *he did not know of the law.* See *Export Leaf Tobacco Co.* v. *Commissioner*, 78 Fed. (2d) 163, affirming 31 B. T. A. 28; certiorari denied, 296 U. S. 627; *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718, affirming 16 B. T. A. 610; *Flambeau Public Service Co.*, 27 B. T. A. 299.

Under such circumstances, and in view of the cited rule the Board adopted in the *Hamill* case, and has since consistently followed, this record does not convince me that the refusal of the Commissioner to accept the petitioner's bond was arbitrary.

BLACK, SMITH, and MELLOTT agree with this dissent.