AUTOMOBILE LOANS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88173.   Promulgated November 4, 1937.

*C. S. Cowan, C. P. A.*, for the petitioner.
*F. M. Thompson, Esq.*, for the respondent.

OPINION.

HARRON: The petitioner is a corporation incorporated under the laws of the State of Washington, with its office in Seattle. It filed an income tax return for the year 1934 with the collector for the district of Washington. The Commissioner issued a notice of deficiency for the year 1934 in the amounts of $1,103.17, surtax liability of a personal holding company pursuant to section 351 (a) of the Revenue Act of 1934, and $275.79, 25 percent addition to tax pursuant to section 291 of the Revenue Act of 1934. The respondent has conceded by stipulation that the 25 percent addition to tax is in error and does not now claim the amount in addition to the surtax. Effect will be given, under Rule 50, to this part of the stipulation filed in this proceeding. The remaining issue is whether or not under the facts the petitioner is liable for surtax under the provisions of section 351 of the Revenue Act of 1934.

The facts have been stipulated and are adopted as our findings of fact. The facts are that the petitioner in 1934 was a personal holding company within the definition of section 351 of the Revenue Act of 1934. Its total outstanding capital stock was owned by two stockholders. On March 15, 1935, the petitioner filed its income tax return on the form known as form 1120, "Corporation Income and Excess-Profits Tax Return" and on that form left blank the space for answer to the question: "Is the Corporation a personal holding company within the meaning of section 351 of the Revenue

Act of 1934?" On that return no dividends are shown to have been paid during the taxable year. Surplus and undivided profits at the end of 1934 are reported as $20,958.75. On March 15, 1935, the stockholders of the petitioner corporation filed their income tax returns on the form known as form 1040 and these returns did not include in income any dividends on stock of domestic corporations, nor their respective pro rata shares of the "adjusted net income" of the petitioner corporation.

On April 15, 1935, the collector of internal revenue at Tacoma, Washington, granted petitioner an extension of 30 days from that date within which to file the return of a personal holding company subject to surtax under section 351. (Form 1120 H.) The extension of time was in accordance with a Treasury decision, No. 4529, granting a general extension of time to personal holding companies to file surtax returns. (Form 1120 H.) Such extension was conditioned only upon the attaching of a copy of the extension to the return when filed and the payment of interest at the rate of 6 percent per annum from March 15, 1935, to the date of payment. The petitioner filed this return on form 1120 H, on April 26, 1935, with the collector in Tacoma, within the extension of time allowed. It reported its undistributed adjusted net income as "None", the amount of the adjusted net income being entered on line 15, with the notation "Reported by shareholders pro rata." On April 26, 1935, the stockholders of petitioner filed income tax returns on form 1140, marked "amended" returns, in which, in addition to the income reported in the returns previously filed on March 15, 1935, there were reported their pro rata shares of the adjusted net income of the petitioner herein. These items were designated "pro rata share, Automobile Loans, Inc." All of the adjusted net income reported by the petitioner in the return on form 1120 H, filed on April 26, 1935, was included in the "amended" returns filed by the petitioner's stockholders April 26.

The Commissioner asserted surtax under section 351, Revenue Act of 1934, against the petitioner on the ground that its undistributed profits had not been reported by its shareholders in their gross income at the time of filing their individual returns as required by section 351 (d). The petitioner alleges error and contends that the reporting by its shareholders of their pro rata share of petitioner corporation's undivided profits on amended returns is sufficient to meet the requirements of section 351 (d), so as to avoid imposition of the surtax on petitioner.

The argument of the petitioner corporation is that its shareholders did not "file their returns" within the meaning of section 351 (d) until the "amended" or second returns were filed; that the filing of returns by the shareholders was interdependent upon the

petitioner corporation's filing its surtax return, form 1120 H, and the time for the filing of returns by its shareholders in respect to section 351 (d) was kept open until petitioner filed form 1120 H.

This argument certainly has no foundation in the applicable statute and to sustain such contention would result in adding a condition to the applicability of section 351 (d) that Congress has not provided. The filing of income tax returns by a personal holding company and by its shareholders are separate and independent acts. Under the facts in this proceeding we think it irrelevant, in determining whether or not section 351 (d) has become operative so as to avoid surtax on this petitioner, that the petitioner corporation received an extension of time to file its surtax return on the prescribed form 1120 H.

Section 351 (d), Revenue Act of 1934, is quoted in the margin.[1] It provides the condition upon which a surtax shall not be imposed on a personal holding company. The language of the section is plain. It provides, briefly, that the tax imposed by section 351 shall not apply *if* all the *shareholders* of the personal holding company include, *at the time of filing their returns*, in their gross income, their entire pro rata shares, whether distributed or not, of the "adjusted net income" of the corporation for the taxable year. Emphasis is placed upon the words "at the time of filing their returns" and further emphasis is placed on the words "their returns", the returns of the shareholders. We believe the meaning of section 351 (d) is clear and that its intent is that if the surtax imposed on a personal holding company by section 351 is not to apply to such company its stockholders must act promptly—they must report in gross income their shares of the "adjusted net income" of their holding company *at the time of filing their returns* and not at any other time.

The Commissioner in this case refused to recognize the second income tax returns filed by the shareholders of this petitioner as meeting the condition set forth in section 351(d). We think his action was correct. He interprets this section to mean that the corporate net income must be included in the *original* returns of the shareholders if the corporation is to escape tax and this is consistent with his interpretation of a similar type provision in the taxing statutes, namely, section 104, Revenue Act of 1932, and particularly section 104 (d) of the Revenue Act of 1932, which is like section

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

  *    *    *    *    *    *    *

(d) PAYMENT OF SURTAX ON PRO RATA SHARES.—The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire pro rata shares, whether distributed or not, of the "adjusted net income" of the corporation for such year. Any amount so included in the gross income of a shareholder shall be treated as a dividend received. Any subsequent distribution made by the corporation out of earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his pro rata share, be exempt from tax in the amount of the share so included.

812

351 (d), Revenue Act of 1934. See I. T. 2881, C. B. XIV–1, 150.[2] See also, Regulations 86, article 351–7.

The question has been raised before as to whether or not the Commissioner errs in refusing to accept or recognize amended income tax returns. Since the statutes are silent on the right to file so-called amended returns, it is only in exceptional cases that the courts have held that the Commissioner is arbitrary and unreasonable in rejecting amended or second returns. It has been held that such exceptional circumstances exist where the taxpayer had incomplete knowledge of material facts at the time of filing the return or where changes in the law which had retroactive effect were adopted only a short time before the due date for filing tax returns so that the taxpayer had such scant notice of the law as not to be held to have knowledge of it. See *Lucas* v. *Sterling Oil & Gas Co.*, 62 Fed. (2d) 951; *Patent Royalties Corporation* v. *Commissioner*, 65 Fed. (2d) 580; *Morrow, Becker & Ewing, Inc.* v. *Commissioner*, 57 Fed. (2d) 1. But in this proceeding we do not find such exceptional circumstances as to make the Commissioner's action arbitrary. It is noted that the Revenue Act of 1934 was adopted May 10, 1934, almost a year before the time for filing the tax returns involved here. Knowledge of the law must be presumed. We see no mechanical obstacle in the way of the shareholders' adopting the procedure allowed them in section 351 (d) such as would make the filing of their returns dependent on the holding company's filing its surtax return first or at the same time. Section 351 provides in clear terms, by definition and otherwise, what the shareholders shall do to ·shift the tax to themselves.

There is a further rule that we take notice of, which has some bearing on the present issue. Where the revenue act provides a taxpayer with the right to elect to file one of alternative kinds of tax returns it is a general rule that "the right of choice or election to file one or the other kind of return is exercised by filing the return." *Dr. Pepper Bottling Co.* v. *Commissioner*, 69 Fed. (2d) 768, 769; *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718. Under section 351 (d) all the shareholders of a personal holding company may elect to be taxed. They make that election at the time of filing their individual returns and we believe it is consistent with the rule stated above that the tax liability becomes fixed when the original return is filed and can not be altered by filing another return or

[2] Where at the time of filing their returns the shareholders of a corporation which comes within the provisions of section 104 of the Revenue Act of 1932, relating to accumulation of surplus to evade surtaxes, did not include in their gross incomes their entire distributive shares of the corporation's net income in accordance with the provisions of section 104 (d) of the Revenue Act of 1932, amended returns will not avoid imposition of the tax provided by that section.

"amended" return. Cf. *R. Downes, Jr.*, 5 B. T. A. 1029; *Rose* v. *Grant*, 39 Fed. (2d) 340. Petitioner's shareholders filed returns March 15. At that time in effect they elected not to report their shares of the adjusted net income of the petitioner.

The determination of the Commissioner is sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

ARUNDELL, dissenting: The majority opinion overlooks several facts that seem to me to be important, and by reason of these omissions in the premise an erroneous conclusion is reached. First, the tax imposed by section 351 was a new tax. Theretofore Congress had imposed a heavy tax on corporations improperly accumulating surplus in order to avoid surtax on the stockholders, but it was recognized that the administration of the statutes had not been attended with signal success. In the enactment of the Revenue Act of 1934 provisions relating to improper accumulations of surplus were retained, with a change of rates (section 102), and personal holding companies were placed in a separate classification, subjected to high rates of taxes, and surrounded with a number of statutory provisions wholly different from those applicable to any other class of taxpayer. That Congress was fully aware of the novelty of the tax is obvious from the Congressional Committee reports. 73d Cong., 2d sess., H. Rept. 704, p. 11; S. Rept. 558, p. 13.

Second, the Treasury Department recognized the novelty of the tax and the difficulties facing taxpayers subject to it by issuing T. D. 4529 on March 7, 1935 (C. B. XIV-1, p. 82) granting to personal holding companies an extension of time to April 15, 1935, for the filing of surtax returns, form 1120H, and the payment of the tax. In this case the collector granted the taxpayer a further extension of 30 days.

Third, section 351 is not an isolated, independent section to be administered without reference to other provisions of the statute.

Fourth, the petitioner and its stockholders obviously acted in good faith and filed all returns within the time allowed therefor.

The tax on personal holding companies is not strictly a revenue measure. Its purpose is to prevent avoidance of normal tax and is recognized as placing a "heavy penalty" on the companies coming within its reach. See Congressional Committee reports, *supra*. The rates of imposition are graduated from 30 to 40 percent on "undistributed adjusted net income" as compared with 13¾ percent on the "net income" of other corporations. These discriminatory rates were not made absolute. The same section that imposes them contains the

mitigating provision allowing the stockholders to report the income and pay the tax at the rates prescribed for individuals, which begin with the comparatively low rate of 4 percent. The Treasury Department recognized the radical departure of this new imposition from the long established method of income taxation and the difficulties of administration by issuing T. D. 4529, granting a blanket extension of time for filing returns and paying the taxes. This new imposition required a new kind of return in order to arrive at "undistributed adjusted net income", which was the measure of the tax. This form, 1120H, was apparently not ready for distribution in time to permit filing by March 15, 1935. The earliest date of publication of this form in the commercial tax services is March 20, 1935. Regulations 86 were not approved until February 11, 1935, and not released until March 2, 1935. Rept. No. 13, Prentice-Hall Federal Tax Service, 1935; Bulletin No. 7, Commerce Clearing House Federal Tax Service, 1935. The date they were available to the public was no doubt later than that. The "adjusted net income" and the "undistributed adjusted net income" not only differ from each other, but are vastly different from the net income that is the basis of the ordinary income taxes in the 1934 and prior acts. In arriving at the "adjusted net income" certain allowances are made for income, war profits, and excess profits taxes and for charitable contributions and gifts not allowable to other corporations, and capital gains and losses are given a different treatment. In arriving at "undistributed adjusted net income" deductions from "adjusted net income" are allowed for a percentage of the excess of the adjusted net income over certain dividends from personal holding companies, for amounts set aside to retire indebtedness, and for dividends paid. This short statement of the complexity of calculation demonstrates the well-nigh impossibility of preparing returns without the aid of official interpretation and forms. It also brings the case within the principles of the case of *Morrow, Becker & Ewing Co.* v. *Commissioner*, 57 Fed. (2d) 1, where the taxpayer sought to file amended returns some nine months after filing its original return. The statute affecting the case had been enacted shortly before the original return was filed. The court held that "while there is no statutory authority for an amended return, amended returns are frequently permitted" and that they should have been accepted by the Commissioner in that case. The opinion reads in part:

\* \* \* In view of the radical changes in the law, of which the petitioner had scant notice, if any, in fairness and justice to the taxpayer the returns should have been received and considered. Taxes are assessed on income and not on honest mistakes of the taxpayer. It was the duty of the Commissioner to do nothing arbitrary or unreasonable that would deprive petitioner of rights

created by the new law and the regulations thereunder. It was a breach of discretion on the part of the Commissioner not to receive the amended return from 1925 under the circumstances disclosed.

This petitioner and its stockholders are in a more favorable position to claim all the benefits of the law than the taxpayer in the *Morrow, Becker & Ewing* case. They acted as promptly as the circumstances would permit and the filing of amended returns under the facts here can not be said to be an afterthought prompted solely by a desire to reduce taxes. The stockholders and the petitioner corporation filed timely returns reporting for taxation the income calculated in accordance with the general pattern of the income tax statutes. The only omission that can be charged to them is the failure of the stockholders to include in their original returns the then new "adjusted net income" which, because of the tardiness of the Treasury Department in distributing official information and forms, they could not reasonably be expected to know how to compute. Had the stockholders delayed filing their individual returns until the time allowed for filing the corporate return, they would have been subject to penalties and interest for their tardiness. It seems to me that the Commissioner is taking an arbitrary position in refusing to allow the stockholders to conform their returns to that of the corporation within the time allowed to the corporation to calculate and report the new and different kind of income taxed under section 351.

Under the circumstances here I do not think that the doctrine of election applies. In the first place, neither the statute nor the regulations require that the stockholders report their pro rata shares of the corporate income in their *original* returns. There is no expressed right of election, and if one can be implied it is not in terms confined to an original filing. In the second place, the making of an election presupposes knowledge of the facts and of the circumstances present. "In order to constitute a valid election, the act must be done with a full knowledge of the circumstances of the case, and the right to which the person put to his election was entitled." *McIntosh* v. *Wilkinson*, 36 Fed. (2d) 807.

It is not my view that shareholders should be permitted to file amended returns in all cases. It may be that in other cases, and particularly for later years, the corporate return and the shareholders' returns can be filed at the same time and all parties will know at that time the method of reporting that is most advantageous, and under such circumstances they would be held to have made a deliberate, conscious election. But here, where the corporation was granted additional time for filing in recognition of the Treasury's tardiness in supplying information and forms there was a real

816

obstacle in the way of the stockholders' awaiting the filing of the corporate return before filing their individual returns. Had they done so, they would have been subject to the charge of delinquency. In the circumstances of this case I am of the opinion that the Commissioner's refusal of the amended returns was arbitrary and should not be sustained. Cf. *F. Harold Johnston, Executor*, 33 B. T. A. 551.