WILLIAM A. WEBSTER COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88700. Promulgated May 5, 1938.

*F. E. Hagler, Esq.*, and *Edgar A. Ryerson, C. P. A.*, for the petitioner.

*Harry R. Horrow, Esq.*, for the respondent.

### OPINION.

HILL: This proceeding is for the redetermination of deficiencies in income and excess profits taxes for the fiscal year ended February 28, 1934, in the amounts of $2.34 and $2,357.99, respectively. Petitioner assigned as errors the action of the respondent (a) in failing to allow

"certain depreciation on Furniture and Fixtures", and (b) in failing to allow "the declared value of Capital Stock as stated by the petitioner", which alleged errors were denied by respondent.

The first issue above indicated apparently was abandoned by petitioner, no evidence being offered thereon. In its brief petitioner states:

There is only one question presented in this appeal. It is: May a taxpayer make a second, amended, or corrected declaration of value for its capital stock tax prior to the expiration of the period provided for making such declaration?

The deficiencies determined by respondent are, therefore, approved in so far as they result from the adjustment of depreciation, and we will consider here only the second issue.

The facts were stipulated in part, and none is in controversy. Petitioner is a Tennessee corporation, with its principal office at Memphis. On July 29, 1933, petitioner filed on the form provided therefor a return of capital stock tax for the year ended June 30, 1933, which return disclosed an original declared value for petitioner's entire capital stock of $395,157, and on the same date petitioner paid to the collector of internal revenue the capital stock tax shown to be due on such return in the amount of $395.

On September 8, 1933, and within the time for filing capital stock tax returns for the year 1933, as extended by Treasury Decisions 4368 and 4386, petitioner filed on the form provided for capital stock tax returns a return intended by it as an amended return for the year 1933, but which is not admitted by respondent to be an amended return, or any return whatsoever, which disclosed an original declared value of $800,000 for the entire capital stock. On the same date petitioner paid to the collector of internal revenue $405, which is the difference between the amount of capital stock tax shown to be due by the alleged amended return, which was $800, and the amount theretofore paid, which was $395.

Under date of June 12, 1934, respondent issued his notice of refund, with which there was enclosed a Treasury check for $423.13, being for the return of the $405 so paid on September 8, 1933, together with $18.13 as interest thereon. This check has never been endorsed or cashed by petitioner, who never made claim or demand for same.

Under date of January 18, 1937, respondent issued his notice of deficiency for petitioner's fiscal year ended February 28, 1934, which notice asserted a deficiency in income tax of $2.34 and a deficiency in excess profits tax of $2,357.99, all of which the parties have stipulated is due and assessable on the basis of a declared value for petitioner's capital stock of $395,157, but none of which is due or assessable on the basis of the declared value of $800,000.

The question presented here is governed by sections 215 (f) and 216 (a) of the National Industrial Recovery Act, 48 Stat. 195, 208, quoted in the margin.[1] The language used in the pertinent provisions of the statute appears too plain and unambiguous to require interpretation. In construing the words of an act of Congress the purpose is to seek the legislative intent, and we should "give to the words their natural significance unless that leads to an unreasonable result plainly at variance with the evident purpose of the legislation." *Lincoln* v. *Ricketts*, 297 U. S. 373, 376. The plain, obvious, and rational meaning of a statute is always to be preferred. *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552.

The pertinent language used in the quoted statute is that, in valuing the capital stock of a domestic corporation for purposes of the capital stock tax, "the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value can not be amended)." Petitioner filed its *first return* pursuant to the statute on July 29, 1933, in which it declared the value of its entire capital stock to be $395,157, and paid thereon the tax due in the amount of $395. Later, on September 8, 1933, but within the time as extended for filing capital stock tax returns, petitioner filed its so-called amended return in which it sought to amend its former declaration of value by increasing the amount thereof from $395,157 to $800,000. We think this action was plainly prohibited by the express terms of the statute. No question is raised here that the enactment was unconstitutional.

The legislative intent is not difficult to discover, and strongly indicates that the words used, when given their natural and commonly

---

[1] SEC. 215. (f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value can not be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section (or as of the date of organization in the case of a corporation having no income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section). For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus (1) the cash and fair market value of property paid in for stock or shares, (2) paid-in surplus and contributions to capital, and (3) earnings and profits, and minus (A) the value of property distributed in liquidation to shareholders, (B) distributions of earnings and profits, and (C) deficits, whether operating or nonoperating; each adjustment being made for the period from the date as of which the original declared value was declared to the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section. * * *

SEC. 216. (a) There is hereby imposed upon the net income of every corporation, for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 215, an excess-profits tax equivalent to 5 percentum of such portion of its net income for such income-tax taxable year as is in excess of 12½ percentum of the adjusted declared value of its capital stock * * * as of the close of the preceding income-tax taxable year (or as of the date of organization if it had no preceding income-tax taxable year) determined as provided in section 215. The terms used in this section shall have the same meaning as when used in the Revenue Act of 1932.

understood meaning, aptly expresses such intent. Under the capital stock tax provisions of the earlier revenue acts, much administrative difficulty was encountered in determining the value of capital stocks. In order to obviate that situation, a new plan was adopted in the enactment of the present law. The capital stock tax imposed was to be computed for the first year on the basis of value of the stock as declared by the corporation in its *first return*, with the proviso that such original declaration of value could not thereafter be amended; and for subsequent years, it was provided that the original declared value, as modified only by changes in the capital structure, should be the basis.

However, in order to assure a reasonable original declaration of value, an excess profits tax was levied upon the net income of the corporation in excess of 12½ percent of the adjusted declared value of its capital stock. Hence, while a declaration of low value for the capital stock would reduce the capital stock tax, it would tend to increase in a much larger amount the excess profits tax in the event the corporation later had substantial net income. See report of the Senate Committee on Finance, No. 114, p. 6; H. R. 5755 73d Cong., 1st sess.

The obvious purpose of prohibiting amendment of the original declared value was to prevent a corporation from declaring an unreasonably low value for its capital stock in order to reduce the capital stock tax, at a time when it probably could not be determined what its net income subject to the excess profits tax would be, and then later, when such net income could be determined, reducing its excess profits tax by increasing the capital stock valuation through the filing of an amended capital stock tax return. But whatever might be the actual purpose of an attempt to amend the original declared value, the language of the statute is absolute; no exception is provided.

In *Scaife & Sons Co.* v. *Driscoll*, 94 Fed. (2d) 664, arising under the Revenue Act of 1935, which, in section 105 (f), contains the same provisions as the statute hereinabove quoted, the court had before it substantially the same question we are considering here and under similar facts. In its opinion the court said:

The statute declares that the declaration of value contained in the first return can not be amended. This language is plain, and it means what it says. Therefore the Collector possesses no power to accept and file an amended return in lieu of the original return. It follows that no power lies in any court to enjoin the Collector from a refusal to accept a return, when that refusal is in accordance with the law.

A somewhat analogous question was considered by us in *Automobile Loans, Inc.*, 36 B. T. A. 809. That case arose under section 351 of the Revenue Act of 1934, which imposes a surtax upon personal

holding companies, but in subdivision (d) provides that the tax shall not apply if all the shareholders of the corporation include, *at the time of filing their returns*, in their gross income their entire pro rata shares, whether distributed or not, of the "adjusted net income" of the corporation for the taxable year. In the cited case the shareholders of the petitioner corporation, a personal holding company, filed their first or original returns without reporting in gross income their pro rata shares of the corporation's adjusted net income, and later, but within the time allowed the corporation for filing its return, they filed "amended returns" including in gross income *their pro rata* shares of the corporation's adjusted net income. We held that "the time of filing their returns" was when the first returns were filed, and that the requirements of section 351 (d) were not met by the filing of the "amended returns."

Petitioner cites and relies upon the decision of the United States District Court for the Western District of Kentucky in *Oertel Co.* v. *Glenn,* 13 Fed. Supp. 651, wherein it was held that a taxpayer corporation filing a capital stock tax return, showing total value of its outstanding stock to be an amount which was its book value, could correct the mistake by filing an amended return before the excess profits tax liability had accrued, showing value of capital stock determined by capitalization of earnings and including intangibles not on the books. With all due respect for the court, we are unable to accept its reasoning, or to agree with the conclusions reached.

In accordance with what we have said hereinabove, we hold that the declaration of value contained in petitioner's first return could not thereafter be amended, and respondent's determinations are approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

OPPER, dissenting: We regret our inability to concur in the conclusion reached by the majority. But it seems to us that this result is unnecessarily inequitable and harsh, and contrary to the evident if not to the explicit intent of the statute.

Section 215 of the National Industrial Recovery Act [1] "provides for a new tax." [2] Subdivision (a) of that section imposes the tax "For each year ending June 30" and subdivision (d) requires "Every corporation liable for tax under this section" to "make a return under oath within one month after the close of the year with respect to which such tax is imposed   *   *   *." It permits the Commissioner

[1] 48 Stat. 207.
[2] S. Rept. No. 114, 73d Cong., 1st sess., p. 6.

to "extend the time for making the returns and paying the taxes imposed by this section *under such rules and regulations as he may prescribe* with the approval of the Secretary, but no such extension shall be for more than 60 days." (Emphasis supplied.) On June 23, 1933, the Commissioner, with the approval of the Acting Secretary, extended this period to August 31 by Treasury Decision 4368. On August 15, Regulations 64 were promulgated, article 55 of which confirmed this extension to August 31. On August 24 a further extension to September 29 was granted and Regulations 64 were amended accordingly.

Petitioner filed its original return for the first year on July 29, which was within the period fixed in terms by the statute; and attempted to file its amended return for the first year on September 8, which was after the original period had expired, but well within the final extension properly granted to September 29 by the amendment to Regulations 64. That the amended return was submitted within the permissible period is apparently conceded by respondent.

In seeking to determine the true meaning of the phrase "its first return", as applied to this proceeding, resort to the general plan and purpose of the legislation may be of value. Sections 215, which imposes the capital stock tax, and 216, levying the excess profits tax, are closely related. We find that "In order to avoid controversy as to the value of the capital stock, the [capital stock] tax is imposed on the value declared by the corporation. A reasonable value is, however, assured by means of an excess profits tax * * * *The primary object of this tax is to induce corporations automatically to declare a fair value for their corporate stock* * * *."[3] (Emphasis supplied.)

To hold, therefore, that a corporation may not increase to its fair value the figure placed by it upon its capital stock is to apply the related provisions of the two sections in such a manner as precisely to defeat their declared "primary purpose." Unless some inescapable legislative language or plan requires this consequence we feel it should be avoided. It is evident, however, that, as to the plan of the statute, no different result would have been reached had the petitioner refrained from declaring any value until the date when it submitted its amended return. Had it done so, it would concededly have been in position to proceed upon the value so declared. We can not see what harmful result could have been envisaged by Congress in permitting it to accomplish the same purpose by filing its amended return within the same period.

As to the language itself, an examination of section 215 seems to us to make it clear that when the words "first return" were used

[3] See footnote No. 2, *supra.*

they were intended to designate the return for the first year, thus distinguishing that return from the one made for the subsequent year, in which the original value could not be amended. So far as we know, no tenable reason for any different meaning has ever been advanced. And that this is the true intent of the provision·is we believe evident from a statement made in connection with the provisions of section 701 of the 1934 Act which is in *pari materia* with section 215. The managers on behalf of the House, in submitting the conference report on this section, said:[4] "For the first year the tax is measured by the value of the capital stock as declared by the corporation as of the close of its last taxable year ending on or before June 30, 1934. *The value of the capital stock having been declared for the first year, such value may not be subsequently amended.*" (Emphasis supplied.) Construing the critical words as we do to mean "its return for the first year", no reason of logic or interpretation appears to prevent the acceptance by the Commissioner of an "amended return for the first year" subject only to the requirement that it be filed within the time provided by law.

The case of *Scaife & Sons Co.* v. *Driscoll*, 94 Fed. (2d) 664, may seem at first glance to authorize the result reached by the majority. But more careful inquiry reveals that in that case the amended return was filed after the period permitted by law. The same is true of *Automobile Loans Inc.*, 36 B. T. A. 809. We think that distinction from the present proceeding is fundamental[5] and that the principle of *Oertel Co.* v. *Glenn*, 13 Fed. Supp. 651, is applicable here and should be followed.

Arundell and Mellott agree with this dissent.

---

[4] Cong. Record, vol. 78, part 7, p. 7827.
[5] See *McIntosh* v. *Wilkinson*, 36 Fed. (2d) 807, 810. Cf. *Grant* v. *Rose*, 24 Fed. (2d) 115, 118; *Buttolph* v. *Commissioner*, 29 Fed. (2d) 695, 696.