JOHN D. BIGGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY I. BIGGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 89465, 89466. Promulgated February 24, 1939.

*John S. Brookes, Jr., Esq.*, and *A. Stuard Young, Esq.*, for the petitioners.

*F. S. Gettle, Esq.*, for the respondent.

OPINION.

LEECH: The question is whether respondent properly denied petitioners' request to file amended returns upon a separate basis.

Under section 51 of the Revenue Act of 1934,[1] petitioners had the right to elect whether to file joint or separate income tax returns.[2]

Article 53–4, Regulations 86, defines the due date as follows:

Due date of return.—The due date is the date on or before which a return is required to be filed in accordance with the provisions of the Act or the last day of the period covered by an extension of time granted by the Commissioner or a collector. When the due date falls on Sunday or a legal holiday, the due date for filing returns will be the day following such Sunday or legal holiday.

Undoubtedly, as petitioners concede, where a right of election of alternative forms of return exists and that right has been exercised, after, if not before,[3] the due date of the return, either the respondent has no authority to accept amended returns,[4] or such acceptance is discretionary with respondent and its refusal is not subject to review here.[5] Thus, our inquiry is whether petitioners, under the law, did elect to file a joint return for 1934.

Ordinarily, certainly, the filing of a joint return by husband and wife constitutes an election of that form of return.[6] Petitioners' position is that they did not elect, under the law, to file a joint return. They argue that the filing of a tentative joint return did not constitute an election and that the filing of a final joint return, in the present circumstances, did not do so either because, when filed, they did not know their legal rights in the premises, in that a change in those legal rights had been effected by Regulations 86, article 117–5 construing

---

[1] SEC. 51. INDIVIDUAL RETURNS.

\* \* \* \* \* \* \*

(b) HUSBAND AND WIFE.—If a husband and wife living together have an aggregate net income for the taxable year of $2,500 or over, or an aggregate gross income for such year of $5,000 or over—

(1) Each shall make such a return, or

(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income.

[2] O'Rourke v. Commissioner, 81 Fed. (2d) 668; United States v. Pettigrew, 81 Fed. (2d) 666; Buttolph v. Commissioner, 29 Fed. (2d) 695; J. M. Moore, 15 B. T. A. 1037.

[3] William A. Webster Co., 37 B. T. A. 800; Haggar Co., 38 B. T. A. 141; A. J. Crowhurst & Sons, Inc., 38 B. T. A. 1072.

[4] Alameda Investment Co. v. McLaughlin, 33 Fed. (2d) 120; George Freese's Sons, 18 B. T. A. 416, cited with approval in Baird Machine Co., 19 B. T. A. 801; 550 Park Avenue Corporation, 20 B. T. A. 288; Pine Ridge Coal Co., 23 B. T. A. 489; Dr. Pepper Bottling Co., 25 B. T. A. 1323; Smith Paper Co., 31 B. T. A. 28; Fletcher American National Bank, 33 B. T. A. 453; C. H. Mead Coal Co., 38 B. T. A. 1163.

[5] Alameda Investment Co., supra; Smith Paper Co., supra; Fletcher American National Bank, supra; Radiant Glass Co. v. Burnet, 54 Fed. (2d) 718; Lucas v. St. Louis National Baseball Club, 42 Fed. (2d) 984; Safety Electric Products Co. v. Helvering, 70 Fed. (2d) 439; United States v. Pettigrew, supra; O'Rourke v. Commissioner, supra; Buttolph v. Commissioner, supra; Rose v. Grant, 39 Fed. (2d) 340; Morris v. Commissioner, 40 Fed. (2d) 504; J. M. Moore, supra.

[6] O'Rourke v. Commissioner, supra; United States v. Pettigrew, supra; Buttolph v. Commissioner, supra; J. M. Moore, supra; Morris v. Commissioner, supra; Rose v. Grant, supra.

the Revenue Act of 1934, with the knowledge of the contents of which they could not be charged because such regulations were not promulgated until March 2, 1935; or, in effect, that respondent is estopped from claiming their filing of a final joint return was an election on this record.

The tentative return is a form of report of income not specifically authorized by statute. It came into existence in 1919 by reason of the power delegated to the Commissioner to "grant a reasonable extension of time for filing returns whenever, in his judgment, good cause exists" (section 227 (a), Revenue Act of 1918). Section 250 (a) of that act provided that "where an extension of time for filing a return is granted the time for payment of the first installment shall be postponed until the date of the expiration of the period of the extension." Consequently, in order to meet the needs of the Government for immediate revenue the "tentative" return was invented. As a condition of being granted the privilege of its use, the taxpayer was required to pay one-fourth of his estimated taxes with the filing of such return.

We agree that petitioners' filing of the tentative joint return did not constitute the exercise of their right of election.[7] But, after being properly granted an extension of time within which to file a final return,[8] the taxpayers on May 15, 1935, formally filed a final joint return within the period so extended.[9] It is true that Regulations 86, article 117-5,[10] notice of which first appeared January 21, 1935, in T. D. 4511, C. B. XIV-1, pp. 107—110, and published in the regulations on March 2 of the same year, is a new regulation in the sense that, and only that, its detail is not contained in any prior regulation. In no event, of course, can a regulation change the law.[11] But it does not here even attempt to do that. It is true it bears the caption "Application of Section 117 in the case of Husband and Wife." But it then proceeds merely to show the specific application of section 117 of the Revenue

---

[7] *Oklahoma Contracting Corporation*, 35 B. T. A. 232; Regulations 75, art. 10, par. 10 (b). See also *Florsheim Bros. Dry Goods Co., Ltd.* v. *United States*, 280 U. S. 453.

[8] SEC. 53. TIME AND PLACE FOR FILING RETURNS.

\* \* \* \* \* \* \*

(2) EXTENSION OF TIME.—The Commissioner may grant a reasonable extension of time for filing returns, under such rules and regulations as he shall prescribe with the approval of the Secretary. Except in the case of taxpayers who are abroad, no such extension shall be for more than six months.

[9] This return bore no indication that petitioners claimed the right to file separate returns or have their income so taxed. See *Binder* v. *Welch*, —— Fed. Supp. —— (U. S. Dist. Ct., S. Dist. Cal., Nov. 17, 1937.)

[10] ART. 117-5. *Application of section 117 in the case of husband and wife.*—In the application of section 117, a husband and wife, regardless of whether a joint return or separate returns are made, are considered to be separate taxpayers. Accordingly, the limitation under section 117 (d) on the allowance of losses of one spouse from sales or exchanges of capital assets is in all cases to be computed without regard to gains and losses of the other spouse upon sales or exchanges of capital assets.

[11] *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129.

Act of 1934 to the joint or separate returns of a husband and wife where the limitation on the allowance of losses from sales or exchanges of capital assets, contained in subsection (d) of section 117, becomes effective. It does contain the statement that whether a husband and wife make joint or separate returns, they are considered separate taxpayers, but that is merely a statement of what has long been the law.[12] Regulations 86, article 117-5, merely construed, and, we think, properly, the application of section 117 (d) in the light of that law.[13] Article 381 of Regulations 77 provides that where a single joint return is filed by husband and wife "the tax is imposed on the aggregate income and all deductions and credits to which *either is entitled* shall be taken from such aggregate income. * * *" (Emphasis supplied.) Thus that article would limit these same deductions of a husband and wife under section 117 (d) of the Revenue Act of 1934, as does article 117-5 of Regulations 86, *supra*, which superseded the earlier regulation.

It follows that, since husband and wife had theretofore been determined to be separate taxpayers, the rights of the petitioners, as such, under the Revenue Act of 1934, section 117 (d), were fixed by the effective date of that act, which was May 10, 1934. That was just a year prior to the date upon which the petitioners filed their final joint return.

It is elementary that every one is presumed to know the law and that ignorance of a taxpayer's right thereunder does not vitiate such an election of a taxpayer.[14] Moreover, since the Board is a creature of statute, its jurisdiction is fixed by statute which does not include equitable jurisdiction. It thus has none.[15] This limitation has been recognized in many cases in which the so-called equities were, in our judgment, not weaker than those here.[16] But, assuming it had such jurisdiction, we know of no authority under which it would be said that the equities in this situation warranted a holding that the taxpayers should not be charged with knowledge of the law as it existed when they filed their final joint return. Particularly is this so, since the petitioners, before filing their final joint return, actually knew of a change in the law affecting their rights.

---

[12] *Frank B. Gummey*, 26 B. T. A. 894; *Joseph E. Uihlein*, 30 B. T. A. 399; *Frank M. Arguimbau*, 31 B. T. A. 604.

[13] *Walter C. Janney*, 39 B. T. A. 240.

[14] *United States* v. *Pettigrew, supra; O'Rourke* v. *Commissioner, supra; Buttolph* v. *Commissioner, supra; Rose* v. *Grant, supra; Morris* v. *Commissioner, supra; J. M. Moore, supra; Smith Paper Co., supra; Fletcher American National Bank, supra; C. H. Mead Coal Co., supra; Dorothy Glenn Coal Mining Co.,* 38 B. T. A. 1154; *William A. Webster, supra; Hagger Co., supra; A. J. Crowhurst & Sons, supra.*

[15] *Northport Shores, Inc.*, 31 B. T. A. 1013.

[16] *C. H. Mead Coal Co., supra; Dorothy Glenn Coal Mining Co., supra; William A. Webster, supra; Haggar Co., supra; A. J. Crowhurst & Sons, supra; J. M. Moore, supra*

However, is respondent estopped from taking the position that the filing of the final joint return by the petitioners was an election here? Before filing their final joint return, petitioner's secretary had telephoned the person in the local office of the collector of internal revenue at Cleveland, Ohio, who had checked his returns for the preceding several years, and had asked him whether the petitioners could file final separate returns. This person, after consulting with his associates in that office, advised that, *in his opinion*, such returns could not be made. Aside from the general rule that estoppel can not apply against the Government,[17] we know of no precedent which would support its application here. Neither the official status of the person advising petitioner, nor that of his consultants, is disclosed. And that person purported to give petitioner's secretary only his opinion and that of those associates. A mere opinion does not support an estoppel.[18]

Moreover, in any event, the great weight of authority is that representations made by revenue agents or collectors are not binding on the Government.[19]

We conclude the filing of a final joint return by the petitioners was a valid, binding election to return their income for 1934 in that form, and that respondent was right in his denial of their later request to file amended separate returns.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

---

VAN FOSSAN (dissenting): I am unable to agree with the ruling of the majority that the petitioners made a free or binding election to file the so-called "final return." The joint return was filed under the compulsion incident to the refusal of the office of the collector to permit a change to separate returns. Thus the petitioners were deprived of the freedom of choice essential to an election. "* * * if the right [of election] be granted, opportunity for fairly exercising it should not be cut off or disparaged, especially when ignorance, misadvice or what would ordinarily be recognized as excusable error, has entered into its exercise." *McIntosh* v. *Wilkinson*, 36 Fed. (2d) 807. It would have availed taxpayers nothing to have tendered separate returns. They would not have been accepted. *Garland C. Kent*, 27 B. T. A. 1055; *United States* v. *Pettigrew*, 81 Fed. (2d) 666.

[17] *Wilber National Bank* v. *United States*, 294 U. S. 120.

[18] *May Rogers*, 31 B. T. A. 994, and cases cited therein.

[19] *Sutton* v. *United States*, 256 U. S. 575; *Utah Power & Light Co.* v. *United States*, 243 U. S. 389; *Wilber National Bank* v. *United States, supra; Darling* v. *Commissioner*, 49 Fed. (2d) 111; certiorari denied, 283 U. S. 866; *Searles Real Estate Trust*, 25 B. T. A. 1115; *Binder* v. *Welch, supra.*

In *Detroit Gear Machine Co.* v. *Helvering*, 75 Fed. (2d) 660, the court observed:

> \* \* \* *where there is a complete reversal of policy on the part of the Treasury Department and scant opportunity of notice to those affected, it would be both arbitrary and unreasonable to deprive the taxpayer of rights given him by the Revenue Acts or to hold him, as in this case, to an election made without knowledge of his rights.* In saying this, we do not mean to intimate that the taxpayer is not bound by his misinterpretation or misconstruction of the law, or that he should be relieved because of his failure to know the law, but we are speaking entirely to the matter of an election between two inconsistent rights, either of which may be availed of by the taxpayer under the tax laws. In such a case knowledge, actual or imputed, is essential to constitute an election. [Italics supplied.]

In the present case the office of the collector advised that the filing of the tentative return precluded a change to separate returns. That this was error, even the prevailing opinion concedes. This misadvice by the collector's office is solely responsible for the present proceedings. Had the collector advised correctly, taxpayers would have filed separate returns and these cases would never have been filed.

Although I readily agree that the Board has no general equitable jurisdiction, I do not agree that, in determining the question here present as to the exercise of an election granted by statute, equitable considerations arising from the facts may not be entertained. See *McIntosh* v. *Wilkinson, supra; Detroit Gear Machine Co.* v. *Helvering, supra.* The doctrine of election depends not on technical rules but on principles of equity and justice and actual intention. To be binding an election must be free, advised, and deliberate. *Standard Oil Co.* v. *Hawkins*, 74 Fed. (2d) 395. Here the taxpayers made no such election.

I believe the respondent should be reversed.

ARUNDELL agrees with this dissent.