Ernest T. Laubscher and Elvira B. Laubscher v. Commissioner.
Laubscher v. Commissioner
Docket No. 1459.
United States Tax Court
1944 Tax Ct. Memo LEXIS 100; 3 T.C.M. (CCH) 1025; T.C.M. (RIA) 44315; September 30, 1944
*100 Joseph J. Tucker, C.P.A., 60 E. 42nd St., New York, N. Y., and Raymond J. Knoeppel, Esq., for the petitioners. Lawrence F. Casey, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This case involves a deficiency in income tax for the calendar year 1940 in the amount of $664.02. Petitioners claim an overpayment. Three questions are presented: (1) Whether petitioners are entitled to file separte returns as citizens of Texas, a community property state; (2) Whether the amounts paid for rental of hotel rooms in New York City are deductible as ordinary and necessary business expenses; and (3) Whether petitioners sustained during the taxable year a loss in connection with an oil syndicate and its successor corporation? The facts are as follows: Findings of Fact On March 14, 1941, the petitioners, Elvira B. Laubscher and Ernest T. Laubscher, filed with the collector of internal revenue for the third district of New York a joint individual income and defense tax return for the calendar year 1940. The home or residential address of the taxpayers was stated on the return to be "123 West 57th Street, New York, New York." At this time and during the year before, the petitioners *101 were husband and wife. On June 16, 1941, the petitioners filed with the collector of internal revenue for the first district of Texas separate amended individual income and defense tax returns for the calendar year 1940. The home or residential address of the petitioners was thereon stated to be "P.O. Box 598, Laredo, Webb County, Texas." In 1939 petitioner, Ernest T. Laubscher, traveled in Europe. For some 20 years before that date he had lived in Texas. While in Europe he met some friends in Switzerland who were interested in establishing a machine tool business in the United States and asked him for his assistance in the project. He returned to this country in the autumn of 1939, and, after making several trips in the interest of the new business project in which he was interested, he went to Texas in December 1939. In the early part of January 1940 petitioners came to New York City and on January 18, 1940, rented at the Hotel Salisbury, 123 West 57th Street, New York City, a sitting-room and bedroom, which they retained on a monthly basis throughout 1940 and still had at the time of the hearing. Petitioners paid $1,740 for their joint occupancy of these rooms during 1940. With *102 the exception of a four-weeks trip to Texas in November 1940 during which time he voted there, the petitioner, Ernest T. Laubscher, spent the entire year 1940 in New York City. In January 1940 Laubscher rented in his own name a business office in the Chrysler Building, New York City. His purpose in coming to New York was to assist in the organization of the machine tool business on behalf of his friends who lived in Switzerland. When he came to New York it was his intention to stay about a year, but due to the acceleration of the defense program in this country the plans of the organizers of the business were changed and it became apparent in the taxable year that his presence in New York in connection with the business would be of indefinite duration. The business was incorporated in the summer of 1940 as the Cosa Oversea Trading Corporation and he became its president. Until the new company was formed he had been agent in New York for a Zurich Company, "Commerce D'Outremer". For his services as such agent he received the sum of $6,075 during 1940. He received from the Cosa corporation during 1940 a salary of $3,600 and has been president and a stockholder of it from 1940 to the *103 present time. The stock he held in trust, the beneficiaries undisclosed of record. During 1940 Laubscher earned and received from sources outside of the State of Texas, salaries and other compensation totaling $10,813.35. During this year petitioners' gross income from a ranch in Texas, which is now claimed as their residence, was $6,602. Ernest T. Laubscher did not, in 1940, directly engage in any farming or ranching operations in Texas but the ranch income was derived exclusively from leases. He also owned and let certain houses in San Antonio, Texas. In 1926 Ernest T. Laubscher advanced $1,000 in purchase of an interest in an oil lease of land in Texas, for which he received certain "units" representing his interest in the lease so purchased. Thereafter, in 1927, he made additional advances to the holders of this leasehold interest, who called themselves the Lone Star Oil Syndicate, for payment of bills and drilling expense until the advances totaled $4,500 for which he received stock of the corporation succeeding the Syndicate. Laubscher also caused "his own company", the Lone Star Ice Delivery, to advance on open account to the oil syndicate and also to its successor, the Comal *104 Oil Co., the sum of $5,500, upon which there was a balance due after 1929 of $4,538. He intended that these advances should be repaid and neither he nor his company received stock for them. Mrs. Laubscher invested $900 in the enterprise. In the latter part of 1926, the Oil Syndicate began to drill an oil well on the leased land. After drilling to a depth of 1,780 feet in 1927, the average quantity of oil recovered in any one day did not exceed 8 to 10 barrels. Further drilling during that year to the Edwards formation at a depth of 2,300 feet produced only sulphur water. The Comal Oil Corporation was incorporated in 1928 and took over the lease and drilling operations. Throughout 1928 the corporation experimented with methods of repairing the drilling casing which had collapsed. The total production of oil throughout the period ended in 1930 did not exceed 100 barrels. No oil has been extracted under the lease since 1931, nor have there been any further drilling operations since then or plans therefor. The Comal Oil Company has never had any income or receipts from its operations, and its charter was revoked in 1930 for failure to pay the Texas franchise tax. In 1938 Frank H. Glenn, *105 claiming under a subsequent lease from the owner of the land, instituted a suit in the District Court of Guadalupe County, Texas, against the petitioners and other stockholders of the Comal Oil Corporation, asking for the cancellation of their lease under which the drilling operations had been conducted. In that year Laubscher retained Harry Hertzberg, an attorney, to represent him in the suit and gave him general authority to settle the suit on the best terms possible. On April 17, 1939, the petitioner, through his attorney, Marion McClanahan, an associate of Hertzberg, consented to the entry of a judgment in the suit by the District Court of Guadalupe County. Texas, cancelling the lease under which the Oil Syndicate and corporation had conducted the drilling and divesting the petitioners of any interest in the land under lease. McClanahan received for the petitioner the sum of $450 in settlement of the suit and on January 5, 1940 gave the petitioner, who had just returned from nine months in Europe, $220.55, after deduction of fees and expenses. After 1930 the petitioner, Laubscher, tried to lease, or sublease, his interest in the property on any equitable basis but was unable to *106 do so. Opinion KERN, Judge: Right to File an amended return. 1. The first question is a very narrow one, whether petitioners, man and wife, having filed a joint return of their 1940 income on March 14, 1941, with the collector of the third New York district, and in which they gave their address as 123 West 57th Street, New York City, may now require the Commissioner to accept amended separate returns as citizens of Texas and thus avail themselves of the advantage of the community property law of that state. The return, filed in New York, was signed and sworn to by both petitioners. New separate returns were filed by each petitioner in the first Texas district on June 16, 1941, in which petitioners' home was given as Laredo, Texas. We think the question may be answered without reference to petitioners' legal domicile. Section 53 (b), Internal Revenue Code, requires that the return shall be made "to the collector for the district in which is located the legal residence or principal place of business of the person making the return". A clear choice of place of filing is thus offered to the taxpayer, a matter to which we shall revert later. Election is allowed also to spouses *107 to file a joint or separate return. Section 51(b), Internal Revenue Code. Obviously, the petitioners here made an election to file a joint return, unless it can be said that some equitable consideration of which an administrative tribunal of limited jurisdiction can take cognizance prevents, or unless there was no authority under the statute in the circumstances here present to file the original joint return in New York. Rose v. Grant, 39 Fed. (2d) 340 (5th Circuit); Champlin v. Commissioner, 78 Fed. (2d) 905 (10th Circuit). The cases are collected in our decision of John D. Biggers, 39 B.T.A. 480; where it is clearly pointed out that the taxpayers having elected, the Commissioner "has no authority to accept amended returns, or such acceptance is discretionary" with him and not reviewable here (at p. 483). We can find no equitable reason to allow such an amendment. Certainly, petitioners' ignorance of their legal rights affords no such reason. John D. Biggers, supra.And we are unable to say that the original joint return was void under the statute, as petitioners *108 argue, because it was filed in New York. Petitioners had gone to New York City early in January 1940, and taken rooms at a hotel on a monthly basis. Laubscher rented an office in his own name, became an agent for a Swiss company until he could organize a domestic corporation to make machine tools, which was done in the summer of 1940, and of this corporation he became the president and a stockholder. It is said that he held the stock "in trust", but it is not shown why or for whom. Of his total income, he received over $10,000 outside Texas; from a leased ranch and houses in Texas he got over $6,000. Of his non-Texas income, $3,600 constituted his salary for about 6 months as president of the Cosa Oversea Trading Co. He made one 4 weeks trip to Texas in 1940. We think it obvious on these facts that he had "a place of business" in New York and therefore was entitled to file a return there; and we hold that the joint return constituted a final return made after due election by the petitioners and within the terms of the statute. The respondent is sustained on the first question. New York Hotel Expenses. 2. The second question is whether the petitioners are entitled to deduct *109 $1,740, paid as room rent to a New York hotel in 1940 for their joint occupancy, as ordinary and necessary expenses incurred in trade under section 23( a), Internal Revenue Code. That section includes in such allowable expenses "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." Personal, living or family expenses are expressly made non-deductible by section 24 (a) (1), Internal Revenue Code. Petitioners had a bedroom, sitting-room and bath; and it does not appear of record what the cost of similar accommodations would have been for one person. It does not appear that Laubscher's wife had any duties in relation to the corporation or other business which brought Laubscher to New York City. Laubscher's place of employment was at one place, New York City, to which he had gone for a business purpose and at which he had his principal place of business throughout the year. He was still there and engaged in the same business enterprise some four years later. He was not actually "traveling" from place to place, but he had traveled thither from Texas, where he had made his home. He still retained business *110 interests in Texas, through his ownership of land and houses which were on lease. He had been a resident of Texas for 20 years previous, had married there, and continued to vote there, returning in the taxable year for that purpose and spending altogether 4 weeks there. We have hitherto held that "home" as used in section 23( a) means the taxpayer's place of business, saying in Walter M. Priddy, 43 B.T.A. 18, at p. 31: The dispute centers around the location of Priddy's "home" as that term is used in section 23 (a) of the Revenue Acts of 1934 and 1936. In Mort L. Bixler, 5 B.T.A. 1181. we said that a taxpayer's "home", as that term was used in the statute, was his "place of business, employment, or the post or station at which he is employed." We held that a taxpayer may not keep his place of residence at a point where he is not engaged in carrying on a trade or business and take a deduction for his living expenses while away from such residence or deduct traveling expenses for trips between his place of business and such residence. That case has been consistently followed. Charles E. Duncan, 17 B.T.A. 1088, *111 affd. 47 Fed. (2d) 1082; Jennie A. Peters, 19 B.T.A. 901; and George W. Lindsay, 34 B.T.A. 840. It is obvious that "home", as used in the statute, does not necessarily mean the same thing as domicile, and is not to be determined by the same tests. Even if petitioner intended to retain Texas as his domicile, intended to return there at some indeterminate time to live, pending his return, exercised there certain privileges of domicile and citizenship, such as the suffrage, it does not follow that it was still his "home" for tax purposes. If "home" as used in the statute were construed as equivalent to "domicile" a large part of the population of the District of Columbia, and perhaps of New York City, would be in a position to contend that their expenses of living should be deducted from income subject to tax by virtue of section 23( a), since their formal domiciles are in states other than the state or district in which their place of business or of employment is. Under such a construction a man having his domicile in Indiana where he votes and owns farm lands might live with his family in an *112 apartment in New York City where he practices law and spends the greater part of his time and yet deduct all of his expenditures for rent and food as "traveling expenses * * * while away from home in pursuit of a trade or business." On the other hand, "home" as used in section 23( a) does not mean the place of a taxpayer's temporary employment. Harry F. Schurer, 3 T.C. 544; but should be construed to mean "the place where he is regularly employed or customarily carries on business during the taxable year." Coburn v. Commissioner, 138 Fed. (2d) 763. In the instant case petitioner, Ernest T. Laubscher, was domiciled in Texas where he voted and held property from which he derived rents. In the taxable year he was employed by a business located in New York City, his employment being of indeterminate duration and lasting so far as the record discloses from 1940 to the date of the hearing herein. This business required his physical presence in New York during all of the taxable year with the exception of four weeks, and from it he derived the greater part of his income. We conclude that petitioners' "home" within the meaning *113 of section 23( a) was in New York during the taxable year and that the rent of a hotel suite in that city during that period is not deductible as "traveling expenses * * * while away from home in the pursuit of a trade or business." The instant case is distinguishable on its facts from Wallace v. Commissioner, 144 Fed. (2d) 407, where the expenditures "were incurred in the pursuit of and directly connected with a temporary contract of employment * * *." (Italics supplied.) While the cited case is distinguishable, it is true that the learned Court uses language in its opinion which does not accord with the views here expressed. With all due deference to that Court we are unable to agree with its views which are in some respects contrary to a line of decisions which we have followed for many years. Year of loss on oil lease. 3. The third question is whether petitioners sustained, in the taxable year, 1940, a loss on certain investments in an oil syndicate and the corporation which succeeded it. Beginning in 1926 Laubscher made advances to the Lone Star Oil Syndicate and to its successor, the Comal Oil Co., in which he took stock for part *114 of his advances. Some small production of oil was made in 1926, and further drilling was carried on in later years, but through 1930 the well's total production did not exceed 100 barrels; and since 1931 no oil has been extracted nor has any further drilling been made. In 1930 the Comal Oil Co.'s charter was revoked for non-payment of the Texas franchise tax. After 1930 petitioner tried to sublet this oil interest but could not. Thereafter, in 1938, one Glenn, claiming under a lease made by the owner of the fee later than that made to petitioner's Syndicate, instituted suit in the District Court of Guadalupe County, Texas, against petitioners and other stockholders of Comal, asking for cancellation of their lease; and on April 17, 1939, petitioner, by his attorney, McClanahan, consented to the entry of a judgment, cancelling the lease. Laubscher had invested $4,500 and his wife $900 in the venture, for which stock in the corporation was received; and from 1927 to 1930 Laubscher lent money on open account through his "won company", the Lone Star Ice Delivery, and for this received no stock, since he expected it to be repaid. The total deduction claimed by both petitioners is $9,938.60. *115 The investments thus fall into two classes, investment in the corporate stock and loans to the syndicate and corporation. The whole is claimed as a loss sustained in 1940. Putting aside any technical questions as to whether the Lone Star Ice Delivery was a wholly owned corporation or merely a name under which Laubscher personally carried on business, and as to whether the advances to the syndicate and corporation on open account were a bad debt instead of an investment (a contention not raised by the pleadings or presented on brief), and treating them as an investment on the part of petitioners like the stock purchases, we are unable to see that the loss claimed as a deduction occurred in 1940, the taxable year. The corporation had been abandoned in 1930 when its corporate life was allowed to ebb away by failing to pay the state franchise tax. This obviously rendered any investment in the corporation worthless except for what might be recovered by sale of the corporate assets, the lease. There is no showing that the other members of the syndicate and later stockholders of the corporation had any personal liability. If any existed when the corporation ceased in 1930, it had long since *116 perished by operation of the Statute of Limitations. The lease, therefore, as the sole asset, sustained alike any value inherent in the petitioner's investment. But any interest which the petitioner directly or indirectly owned in the lease, or against which he might proceed was extinguished completely, and with petitioners' counsel's consent, in 1939. It is immaterial that petitioner, Ernest T. Laubscher, returning from an extended stay in Europe, did not receive from his lawyer the $450 paid him in settlement until January 1940; the facts that determine the loss had already occurred. The petitioner had left the settlement in his lawyer's hands and his lawyer was his agent. Petitioners' whole case rests on the contention that Laubscher was on the cash basis and did not know until January 1940, although he had returned to this country in the autumn of 1939, what he had received under the judicial settlement of April of that year, and what net monies were available to him after the payment of attorney's fees and expenses. But his personal knowledge of the exact terms of settlement and of his attorney's fee is irrelevant. The case was settled and the leasehold interest was terminated *117 in 1939 by action of his agent acting within the scope of the authority given by Laubscher. The amount of fees and expenses payable could not affect the amount of the loss, but would merely be an expense item properly deductible as such when paid. The amount of the loss was fixed in 1939 as the amount of petitioners' advances less $450. On this issue we also hold for the respondent. Decision will be entered for the respondent.