Automatic Cigarette Sales Corporation v. Commissioner.
Automatic Cigarette Sales Corp. v. Commissioner
Docket No. 24650.
United States Tax Court
T.C. Memo 1955-15; 1955 Tax Ct. Memo LEXIS 323; 14 T.C.M. (CCH) 52; T.C.M. (RIA) 55015; January 25, 1955
Thurman Hill, Esq. for the petitioner. James C. Maddox, Esq., and William M. Fay, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax, declared value excess-profits tax, and excess profits tax for 1944 in the following amounts: Income tax
$ 3,670.72
Declared value excess-profits tax
5,886.02
Excess profits tax
123,168.40
The contested issues are: (1) Did the respondent err in including in gross income of the petitioner the amount of $73,246 allegedly paid the City of Wheeling, West Virginia, as fines and costs imposed on the operation of slot machines? and (2) Did the respondent err in disallowing depreciation on slot, music, and cigarette machines, and in computing capital gain on the sale of such machines sold in 1944 by *324 increasing the petitioner's basis as a result of the disallowance of such depreciation? The petition also assigns as error the disallowance of certain depreciation claimed by petitioner in the year 1945 on its coin-operated machines. No deficiency was determined for the year 1945 but the respondent determined an overassessment for that year. At the opening of the hearing of this proceeding the respondent filed a motion to dismiss the petition insofar as it relates to the year 1945. Decision on that motion was reserved. Other issues raised by the petition with respect to the taxable year 1944 have been abandoned by the petitioner. Findings of Fact The facts which have been stipulated are found accordingly. Petitioner is a West Virginia corporation having its principal office in Wheeling, West Virginia. It filed its corporation income and declared value excess-profits and excess profits tax returns for the year 1944 with the collector of internal revenue for the district of West Virginia. During the calendar year 1944, the petitioner was engaged in the business of buying, selling, and operating coin vending machines, including cigarette, juke box, game and slot machines, *325 and other vending machines. Prior to and during the year 1944 the petitioner owned a substantial number of slot machines. In 1944 it installed a large number of slot machines in various locations in the City of Wheeling which were kept and exhibited for gaming purposes in violation of Section 32 of Ordinance 38 of the City of Wheeling, West Virginia. Prior to and during the taxable years the city authorities had a policy of imposing a fine on each machine found to be operated in violation of its ordinance. In 1944 the fine imposed was $100 plus costs of $6, assessed and collected in January, June and September. The city manager instructed the chief of police to check periodically and ascertain the number of slot machines in operation. Upon completing the check a list, containing the names, addresses, and number of machines found in the various locations, was presented to the judge of the police court, who imposed the fine and cost on each machine. The petitioner was notified of the number of its machines located by the police and made payment of the amount imposed to the proper city authorities. The location proprietor was not served with any warrant nor required to appear before *326 the court. It was the custom of the petitioner to send two of its agents to the respective locations once a week or oftener to collect the proceeds of such machines. The petitioner owned the machines, held the keys, furnished the initial capital to put the machines in operation, serviced, and repaired them. The two collectors attended the opening of the machines in the location proprietor's presence and determined the total proceeds which were divided on a fifty-fifty basis. From the proprietor's share the collectors retained an amount to be applied to the payment of fines and costs. A record was made of the total proceeds, the proprietor's share, and the amount deducted for the fines. A copy of the receipt was given to the proprietor. A receipt was retained by each collector which was turned over to petitioner's bookkeeper together with the cash proceeds collected. In the case of Meyer Cruger, a location proprietor, the record shows that the fines and costs were deducted prior to the fifty-fifty division of the proceeds of the machines operated in his establishment. The petitioner kept no record of the accounts with the specific location proprietors. It maintained an account designated *327 #209, bearing the caption, "Licenses and Fines Collected and Paid." This account for the taxable year 1944 discloses that the petitioner had had certain cash receipts and that it paid to the City of Wheeling, by checks on the dates shown, the amounts as follows: 1-31-44
$10,600
1-31-44
10,600
1-31-44
2,862
6-30-44
24,062
9-30-44
25,122 The above payments aggregate the sum of $73,246, which is the amount involved in the first issue in controversy. Petitioner, in lieu of crediting income for such amount, credited account #209, which credits have no supporting detail to identify them as the collection of fines from specific establishments. The petitioner did not include the amount of $73,246 in its gross receipts on its income tax return for the taxable year 1944. In determining his deficiency the respondent increased petitioner's gross income by the amount of $73,246. The petitioner has failed to establish that the amount of $73,246 was not taxable income to it in the year 1944. Depreciation Issue Petitioner kept records which disclose the dates its coin-operated machines were purchased, repaired, discarded, traded in, or salvaged. Prior to 1940 *328 petitioner computed its depreciation on a basis of five years for new and three years for used music and cigarette machines. Prior to 1940 petitioner computed its depreciation on a basis of three years for new and two years for used "other machines," which classification includes electrical and mechanical pin ball machines, console machines, and one-armed bandits. The "other machines," shown on the petitioner's depreciation schedule as purchases made from August 1939 through December 1939, are designated as old machines and given a life of one year. From January 1940 through December 1944, the petitioner's depreciation schedules do not distinguish between purchases of new or used machines. During the years 1940 to 1944, inclusive, the petitioner depreciated all cigarette and music machines on a basis of a four-year life, and during the same period it depreciated all "other machines" on a basis of one year. No new machines were manufactured after 1940 but new machines were available for purchase throughout the period 1940 to 1944, inclusive. The petitioner sold all of its coin-operated equipment in 1944 and 1945, except one group purchased in December 1943 at a cost of $2,246.17. *329 The percentage of sales for each of the years of the total sales for 1944 and 1945 is as follows: Sales
Sales
Sales
Total
in 1944
in 1945
Machine
1944
sales
(%)
(%)
Slot
$53,900.00
$121,450.00
44
56
Music
36,062.00
106,262.00
34
66
Cigarette
5,443.50
5,963.00
91
9
In determining his deficiency for 1944 the respondent applied the above percentages to the undepreciated balance claimed by petitioner as of December 31, 1943: Undepreciated
balance
1944
Applied
Machine
12-31-43
(%)
to 1944
Slot
$45,748.52
44
$20,129.35
Music
16,786.69
34
5,707.81
Cigarette
1,505.07
91
1,369.61
$27,206.77
The capital gain of $101,788.86 reported by the petitioner in 1944 on the sale of coin machines in that year was reduced by the amount of $27,206.77 to $74,582.09. The petitioner has not established error in the respondent's disallowance of depreciation for its coin-operated equipment in 1944, and in applying the undepreciated balance claimed as of December 31, 1943, as the petitioner's basis for computing capital gain on the sales of such equipment in the taxable year 1944. Opinion *330 LEMIRE, Judge: The respondent moved at the hearing of this proceeding to dismiss for lack of jurisdiction the error assigned as to the year 1945 on the ground that no deficiency had been determined for that year. An overassessment in income tax was determined for 1945. It is so well established by the decisions of this and other courts that a determination of a deficiency is vital to our jurisdiction that the motion to dismiss for lack of jurisdiction as to the year 1945 is hereby granted, and an order to that effect will be entered. The first question presented involves the propriety of the respondent's action in including in the petitioner's gross income for 1944 the amount of $73,246, which the petitioner alleges constitutes fines and costs paid to the City of Wheeling, West Virginia, and which it collected as agent of the location proprietor where it had installed its slot machines for gaming purposes. Prior to and during the taxable year 1944 the petitioner owned and operated various coin vending machines, including many slot machines, commonly known as one-arm bandits, in the City of Wheeling, West Virginia. Section 32 of Ordinance 38 [1] of the City of Wheeling, which was *331 in effect in the taxable year in question, makes it unlawful to keep or exhibit such a machine for gaming purposes. For the purpose of regulating gambling and to procure revenue, the municipal authorities followed a policy of imposing a fine on each slot machine ascertained to be used for gaming. A fine of $100, plus $6 court costs, was imposed and paid in January, June and September on each machine located by a check made by the city's police department. The fine was imposed by the police court judge and when collected was transmitted to the city treasurer. After the periodic check by the police department was completed the chief of police notified the petitioner of the number of its machines ascertained to be operating, the names of the location proprietors, and the addresses thereof. If the petitioner agreed with the check made by the police the list was handed to the judge of the police court who thereupon imposed the fines and costs which the petitioner paid. *332 The petitioner makes no claim that the fines it paid are deductible as an expense. Its position is that the fine was against the location proprietor where the machine was operated, and that it deducted the fines and costs from the location proprietor's share of the proceeds of the machine and transmitted such sums to the City of Wheeling, as an agent of such proprietor, and hence the monies so collected were not taxable income to it. The petitioner relies on the case of Charles A. Clark, 19 T.C. 48, appeal dismissed (C.A. 9, June 18, 1953). The Clark case follows the rule that where payments are made to a taxpayer under a legal obligation to pass them on to another, such payments are not includible in the gross income of the initial recipient. Horace Mill, 5 T.C. 691; Wayne Hugh Easley Trust, 21 T.C. 51. To bring itself within the above rule, it was incumbent upon the petitioner to clearly establish the existence of an agreement with the locatio proprietors to collect and pay to the City of Wheeling the fines and costs imposed on slot machines used for gaming purposes. Evidence to support such a premise is lacking. Under the city ordinance *333 above quoted, we think it is clear that the fine could be imposed on both the petitioner and the location proprietor. The testimony of the city officials charged with enforcing the policy followed with respect to gambling operations, is contradictory, indefinite, and inconclusive. That the city held the petitioner responsible for the payment of the fines and costs and that the petitioner actually paid the fine is not denied. No warrant was served upon the location proprietor nor was his presence required before the court. So far as this record discloses the only information the location proprietor had with respect to the fines was that certain deductions were made by the petitioner's collectors on account of fines. The testimony given by six location proprietors in the criminal case of United States v. William G. Lias (N.D.W. Va.) [103 Fed. Supp. 341,] was stipulated as evidence in this proceeding. No one of such witnesses testified with respect to any agreement with petitioner as to the fines imposed by the city on the operators of the slot machines. Their testimony covered the practice followed by the petitioner's agents who collected the proceeds of the machines. *334 Five of the witnesses testified that the proceeds of the machines were split fifty-fifty and that the collectors deducted a certain amount from their share as license fees and fines. The witness, Meyer Cruger, in whose establishment four of petitioner's machines were installed, testified that an amount was deducted for fines from the gross proceeds before the division was made. The petitioner had its machines installed in more than 100 separate locations. The contradictory testimony of the proprietors, whose testimony was stipulated into this record, would seem to indicate the absence of any specific agreement between the petitioner and the location proprietors as to the fines. If any definite agreement existed the person most likely to have knowledge of the arrangement was William G. Lias, president of petitioner. The record shows that Lias settled any disputes as to the number and location of the slot machines owned by it and paid the fines imposed by the court. Yet, Lias was not sworn as a witness in this proceeding. Furthermore, we think the manner in which the petitioner recorded the receipts of the fines alleged to have been collected from the proprietors, set forth in our *335 findings, does not lend support to the petitioner's contention that it was a mere conduit through which such fines were paid. The underlying records which the petitioner's collectors testified they made and which were turned over to the bookkeeper were not produced, although their production was demanded by the respondent. No reason for their nonproduction was offered. It is reasonable to infer that the records, if produced, would not lend favorable support to petitioner's position. However, in view of the other facts contained in the record, we accord no significant weight to the failure to produce such underlying data. T8e petitioner has the burden to establish that the amount of $73,246 was not income to it in the taxable year 1944. On the basis of the entire record, we have found as a fact that petitioner has failed to carry its burden. On this issue the respondent's determination is sustained. The second question presented involves the propriety of the respondent's action in disallowing, in 1944, depreciation claimed by petitioner on certain coin-operated equipment. The petitioner assigns as error the disallowance of depreciation in the amount of $51,457.58, with respect *336 to its coin-operated machines, as follows: Slot machines
$38,700.87
Music machines
11,672.41
Cigarette machines
1,084.30
The record shows that petitioner started in the slot and other coin-operated machine business in May 1937, at which time it acquired new and used slot, music, and cigarette machines. The new slot machines were depreciated on a basis of three-year life for new and a two-year life for used machines. The cigarette and music machines were depreciated on a basis of five years for new machines and three years for used machines. The original life allotted to each type of machine continued until 1940, when petitioner increased its rates, attributing to slot machines a life of one year and to music and cigarette machines a life of four years. No distinction was thereafter made between new and used machines purchased. The petitioner sold all of its coin machines in 1944 and 1945 except one group on which depreciation was never claimed, the cost of which was carried on its books at $2,246.17. The respondent determined that the life of the coin machines was in excess of four years for music and cigarette machines and in excess of one year for the slot *337 machines. On the basis of a continuation of the original rates of depreciation used prior to 1940, the respondent determined that the undepreciated balance as of December 31, 1943, was equal to or less than the underpreciated balance which should have remained at the time of the sale, and therefore disallowed the depreciation claimed for such machines. The petitioner reported as capital gain the entire sale price received on the sale of coin machines made in 1944, claiming no cost basis. To adjust for the disallowance of depreciation on the coin machines for 1944, and for the purpose of computing capital gain on the sales, an allocation was made of the undepreciated balance remaining as of December 31, 1943, by applying to that balance the percentages resulting from a comparison of sales of each type of machine in 1944 and 1945 to the total sales for those two years. The petitioner does not challenge the respondent's method of computing the capital gain but contends that the depreciation adjustment was unauthorized. The question, therefore, narrows to a determination of the proper useful life of petitioner's coin machines. The treasury regulations require that the amount of *338 allowable depreciation in a given year be determined upon the basis of the reasonably known fact of the useful life of the property involved in the light of conditions existing at the end of such year. [2] The respondent has the authority to revise depreciation allowances. Wier Long Leaf Lumber Co., 9 T.C. 990, reversed without discussion of this point, 173 Fed. (2d) 549. Depreciation is a question of fact and the burden is upon the petitioner to establish error in the respondent's determination.
The evidence on the depreciation issue is not very satisfactory. The petitioner argues that its claimed depreciation should be subtained for these reasons: (1) The petitioner has supported the rates used by the testimony of a qualified witness; (2) the revenue agent's report for the years 1942 and 1943 accepted the amount of depreciation claimed for the coin machines on the basis of the rates used in the taxable year, without an adjustment; and (3) the respondent offered no evidence as to the useful life of the coin machines. That a revenue agent has no power to bind the respondent is well established. *339 John D. Biggers, 39 B.T.A. 480, 486, and authorities therein cited. The petitioner relies heavily upon the testimony of its employee, William Schnell, for support of the rate of depreciation it used in 1944 with respect to its coin-operated machines. The record shows that Schnell entered the employ of petitioner in 1937, at the age of 18, as a coin machine repairman. In 1942 he entered the army and upon his release in 1946 he was reemployed by the petitioner. He testified that service and shop machine records were kept during the time of his employment which would disclose the details of each machine, such as the date of purchase, their disposition, the repairs made, and whether a machine had been dismantled to acquire parts for the repair of other machines. He stated that the life of a particular machine could be determined from these records. Schnell further testified that he had not seen these shop records since 1942, and had not been consulted by the management as to the useful life of any machine until the hearing of this proceeding in 1953. Schnell was not in the petitioner's employ from 1942 until after the petitioner had discontinued its coin machine operation *340 in 1944. He obviously had no information as to conditions existing with respect to the taxable year in question. In the absence of the production of the records on which the witness Schnell based his opinion, and his obvious lack of knowledge as to conditions existing at the close of the taxable year, we are not persuaded that the opinions he expressed should be accepted as possessing that quality of evidence sufficient to carry the petitioner's burden of showing error. The only other evidence contained in this record on the depreciation issue is that of the petitioner's accountant, David S. Goldberg, who prepared the depreciation schedules. Goldberg was not called or qualified as an expert on the useful life of the petitioner's coin-operated machines. He testified that he increased the rate of depreciation on the coin machines after consultation with the petitioner's president, William G. Lias, who, as previously observed, was not sworn in this proceeding. On the basis of the entire picture revealed by this record, we are convinced that the petitioner has failed to carry its burden of showing that the respondent's depreciation adjustment in the taxable year in question was erroneous, *341 and have so found as a fact. Decision will be entered for the respondent. Footnotes
1. It shall be unlawful for any person whatsoever to keep or exhibit within this city, any table, instrument, device or thing used for the purpose of gaming, or on, by or with which money or other articles may be lost or won; or to keep within this city any games of chance or skill, by or at which any money or other articles of value may be lost or won; nor shall it be lawful for any person to keep a room, building, arbor, booth, stand, shed, tenement water craft or float, or to rent the same to be used or occupied for the exhibition or keeping of any such table, instrument, device or thing, or for the playing therein, or thereon of any such game.↩
2. T.D. 4422, XIII-1 C.B. 58 (1934)↩.