CITY OF MILWAUKEE, Respondent, vs. CHICAGO, MILWAU-
KEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appel-
lant.*

*April 9—May 13, 1947.*

* Motion for rehearing denied, with $25 costs, on July 1, 1947.

For the appellant the cause was submitted on the briefs of *Bender, Trump & McIntyre,* attorneys, and *Rodger S. Trump* of counsel, all of Milwaukee.

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Omar T. McMahon* and *Richard F. Maruszewski,* assistant city attorneys, and oral argument by *Mr. Maruszewski* and *Mr. McMahon.*

RECTOR, J.    This appeal presents the question whether appellant railroad is obligated under the provisions of ch. 376, Laws of 1901, to repair such part of the north six hundred ninety-five feet of the Sixth street viaduct as lies above its railroad tracks and right of way.   Repairs were made by the respondent city in the years 1941, 1942, and 1945 after the railroad had refused to make them upon proper demand, and the action is brought to recover the amount expended by the city.

Ch. 376, Laws of 1901, empowered cities of the first class to construct viaducts over railroad tracks crossing public streets.    It provided that such a city might negotiate with the owners or operators of the tracks for payment of such portion of the expense of construction as might be agreed upon.    The provisions of law generally applicable to public works and improvements were adopted and the city was also authorized to issue bonds and exact taxes for such construction.   Railroad companies were required to forever maintain the portions of the viaduct erected above their tracks and right of way, and it is this requirement which forms the basis for the present action.    Sec. 6 provided that nothing in the act should be construed to repeal any provision of law requiring railroad companies to construct and maintain in any first-class city such

viaducts at public railroad crossings as the common council might deem necessary.

Sec. 6 obviously referred to ch. 4, sec. 3, subd. 48, of the Milwaukee city charter permitting the common council to require railroad companies to construct and maintain at their own expense such viaducts at public railroad crossings as the council might deem necessary.

From the affidavits of the parties in support of their motions for summary judgment, the following facts appear: Sixth street, running north and south, crosses the Menomonee river valley in the city of Milwaukee. A branch of the river, commonly called a canal, flows through the valley along a course parallel to the north slope and another branch or canal parallels the south slope.

Ch. 57, Laws of 1878, authorized the city to require the railroad's predecessor to construct a viaduct over its tracks located in the valley between the south canal and the south side of the valley. The viaduct was thereafter constructed. A similar viaduct had been constructed over the predecessor's tracks located between the north canal and the north side of the valley. The city had constructed drawbridges over the two canals. Traffic using Sixth street at that time, therefore, traveled from the rim of the valley on the one side, over the viaduct and the bridge on that side, to the floor of the valley, across the floor and over the bridge and viaduct on the other side to the opposite rim of the valley.

The city council by two resolutions, one adopted in 1883 and one in 1885, ordered the rebuilding of the north viaduct. The authority pursuant to which the resolutions were adopted does not appear in the briefs, but we assume they were adopted pursuant to ch. 4, sec. 3, subd. 48, of the Milwaukee city charter to which we have referred.

On December 26, 1905, the common council adopted a resolution reciting the structural weaknesses of the two viaducts

and their inadequacy by reason of width to accommodate traffic, and requiring the railroad to reconstruct them according to such plans and specifications as might meet the requirements of travel at that time and as might be approved by the council. On the same day it adopted another resolution requiring the railroad to construct a viaduct connecting the north and south portions which had been ordered reconstructed by the companion resolution, except the necessary bridges across the Menomonee canals.

The railroad agreed to reconstruct the two viaducts which it had originally constructed, but refused to construct the connecting portion. There were negotiations between the parties and a part of the council membership was determined to compel the railroad by legal proceedings to build the entire structure. The railroad appears to have taken the position that it was under no obligation either to construct or to share in the construction cost of any part of the viaduct, but expressed a willingness to negotiate. As a result of the negotiations the railroad agreed to proceed with the reconstruction of the north section of approximately six hundred ninety-five feet, and either to reconstruct the south section plus an additional portion of two hundred fifty-eight feet or to reimburse the city at a certain figure based on the footage in the event that the city desired to construct that portion. The offer of the railroad to construct the south portion including the additional two hundred fifty-eight feet was accepted by resolution of the city council enacted April 16, 1907. The same resolution directed the proper authorities to proceed with the construction of the remaining portion other than the north portion then being constructed by the railroad in replacement of the old structure.

Construction of the viaduct was begun in 1907 and completed in 1908, according to the resolution of the common council and the agreement of the parties. The repairs here involved were made to the north six hundred ninety-five feet.

This portion consists of the reconstructed 1883 and 1885 viaduct and was built by the railroad.

The affidavits of the city in support of its motion set out that the viaduct was constructed under the provisions of ch. 376, Laws of 1901. The affidavits of the railroad are accompanied by documents consisting of correspondence and public records which show that it was built pursuant to the council resolution and subsequent negotiations, as recited above. The verity of the documents is not questioned, and so far as they may conflict with the statement in the city's affidavits, they must control. Sec. 270.635 (6), Stats.

In our view the facts bearing upon the construction of the north six hundred ninety-five feet show that it was not constructed under ch. 376, Laws of 1901. That law empowered the city to build a viaduct. No doubt the city exercised that power when it constructed the part of the connecting portion which the railroad refused to construct, but it did not exercise such power in relation to those portions constructed by the railroad. Those portions were constructed by the railroad under its own corporate authority.

It may be argued that the net result of the negotiations between the railroad and the city was the same as though the city had proceeded under ch. 376, Laws of 1901, since it apportioned the financial burden of constructing the viaduct between the city and the railroad. Such an argument, however, does not take account of the important fact that we are concerned not with any such net result but with the narrow question whether the viaduct was constructed by the city under the authority of ch. 376 empowering it to construct viaducts. Clearly the viaduct constructed by the railroad pursuant to the railroad's corporate authority was not a viaduct constructed by the city pursuant to its corporate authority. The purpose of ch. 376 was to empower cities of the first class to construct viaducts in certain cases. The power was given in addition to

power which had theretofore existed in such cities to compel railroads to construct them in certain cases. The matter of maintenance was covered by both corporate powers. The city could require a railroad to construct and maintain or, if the city were to construct, the railroad was required to maintain the portion above its right of way.

The city council, so far as appears, took no action imposing upon the railroad the obligation of maintaining the portions of the viaduct which the railroad erected. It might have done so under the provisions of ch. 4 of the city charter to which we have referred, at least as to those portions above the railroad's tracks and right of way. There was therefore no obligation imposed upon the railroad to maintain and repair those portions. The obligation did not exist either under ch. 376, Laws of 1901, or ch. 4 of the charter.

There is a suggestion in the railroad's briefs that the portions of the present viaduct which it constructed on the site of the original viaducts were built pursuant to the requirement imposed upon it with respect to those viaducts. The contention is without merit, but in view of our disposition of the case it is not material. Other contentions likewise become immaterial.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment dismissing the complaint on its merits.