STOIBER, Appellant, vs. MILLER BREWING COMPANY,
Respondent.

*March 9—April 5, 1950.*

For the appellant there were briefs by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann*.

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan* of Milwaukee, and oral argument by *Herbert C. Hirschboeck*.

FRITZ, C. J.    On this appeal it suffices to note the following facts: Prior to and on and after July 1, 1947, the plaintiff, Michael T. Stoiber, and Frederick C. Miller and Lorraine J. Mulberger constituted the board of three directors of the defendant corporation. Miller was its president and he and Stoiber were employed by defendant in a managerial capacity at a salary of $12,000 and an expense allowance of approximately $12,000 per year. At a meeting of the board of directors on July 22, 1947, it transacted, as recorded in the minutes of the meeting, the following business: By the votes of directors Stoiber and Mulberger, a resolution was adopted which authorized defendant's vice-president and its secretary to enter into a written contract with director Miller for his employment by defendant as one of its two executive managers for ten years at a salary of not less than $12,000 per year, payable semimonthly, plus an annual expense account of $12,000; but Miller did not vote on this resolution; by

the votes of directors Miller and Mulberger, a resolution was adopted which authorized defendant's president and its secretary to enter into a written contract with director Stoiber for his employment by defendant as its coexecutive manager for ten years at the same salary and expense account as Miller; Stoiber did not vote on this resolution; and by the votes of the three directors a resolution was adopted which authorized likewise an agreement for the employment of Norman R. Klug (the personal attorney for director Mulberger) as general counsel for defendant for ten years at an annual salary of $24,000. The minutes of the meeting recording the adoption of said resolutions were signed by the three directors. There was no other authorization of said agreements by the corporation. Pursuant to said resolutions written agreements were prepared and on July 22, 1947, the instrument for plaintiff's employment for the ten-year period was signed by him and defendant's president and its secretary. Plaintiff alleges in his complaint that on or about February 21, 1949, his employment was terminated by defendant without any cause or justification. At a meeting of defendant's board of directors on February 22, 1949,— which plaintiff failed to attend,—the board adopted, by the affirmative vote of two directors, a motion for the discharge of plaintiff for just cause as a coexecutive manager and secretary-treasurer of defendant; and at a meeting of the board on May 9, 1949, which Miller and Mulberger attended, said discharge of February 22, 1949, was ratified and confirmed as an avoidance of said employment agreement for causes including the invalidity of said reciprocal resolutions and votes of July 22, 1947, to authorize said agreement. At a stockholders' meeting of defendant corporation on May 25, 1949, there was passed by a vote of 9,994 shares to 1 share, a resolution which provided:

". . . that the action of the board of directors on February 22, 1949, in discharging M. T. Stoiber and avoiding his ten-year agreement of hire dated July 22, 1947, and avoiding

the resolution of the directors providing for that agreement and the action of the board of directors at the meeting of May 9, 1949, declaring said agreement and resolution avoided on behalf of the corporation are hereby approved and ratified by the stockholders."

In its answer to the complaint defendant admitted that on July 22, 1947, its officers signed the agreement for Stoiber's employment for the period of ten years, but denied (in connection with other denials and matters of defense hereinafter stated) that a legally enforceable contract was made thereby, in view of the matters alleged in the seventh paragraph of defendant's answer, to wit: That on July 22, 1947, plaintiff was a member of defendant's board of three directors, which consisted of Stoiber, Miller, and Mulberger, and at a meeting of the board on that day three resolutions were adopted to authorize the three written agreements of hire for ten years, (1) the agreement with director Miller, (2) the agreement with director Stoiber, and (3) the agreement with Klug; that while each director refrained from voting on the resolution to authorize the agreement in which he or she was interested, the resolutions for the three agreements were prearranged as part of a single plan and agreement between the three directors that Miller and Mulberger would vote for the resolution to authorize the contract for plaintiff's employment for ten years in consideration of his vote for the resolutions to authorize the agreements for the employment of Miller and Klug; that said agreement for Stoiber's employment was signed and delivered pursuant to said resolution adopted by such prearranged reciprocal votes, without any other authorization by directors or the stockholders of defendant; that the resolution purporting to authorize said agreement is illegal and void; and that defendant by its board of directors has avoided said agreement and therefore defendant demands judgment dismissing plaintiff's complaint.

In relation to defendant's motion for summary judgment, it filed an affidavit by Klug in which he stated, in connection with other matters in support of defendant's motion, that at said meeting of the board of directors on July 22, 1947, the resolutions were agreed upon by the three directors before any vote was taken and it was agreed that Stoiber would not vote for the adoption of the resolution to authorize his employment, and that Miller would not vote for the resolution to authorize the latter's employment. In opposition to the defendant's motion, Stoiber filed an affidavit in which he denied that any agreement was made between the directors on or prior to their board meeting on July 22, 1947, in relation to the manner of voting or for reciprocal voting, for the adoption of the respective resolutions to authorize the agreements in question. In view of the conflicts between Klug's statements and the statements by Stoiber, on the other hand, in relation to whether there was a reciprocal voting agreement pursuant to which the resolution was adopted, it is evident from Judge BRAUN's written decision that there would be issues of fact which would have to be determined on a trial instead of on defendant's motion for summary judgment, unless it can be held upon facts which appear in the recorded minutes of the directors' meeting of July 22, 1947, in relation to the adoption of the three resolutions that Stoiber's contract was void or voidable because of reciprocal voting. Judge BRAUN concluded, upon facts which appear in that corporate record, that the adoption of said three resolutions was by prearranged reciprocal voting on the part of the directors, and that therefore the agreements executed pursuant thereto were invalid and defendant had the right to avoid Stoiber's contract.

In so far as it appears from the recorded minutes of the directors' meeting on July 22, 1947, that the three resolutions were adopted separately by reciprocal votes, the facts thus evidenced must be held to control on defendant's motion for

summary judgment. *Milwaukee v. Chicago, M., St. P. & P. R. Co.* 250 Wis. 451, 27 N. W. (2d) 356; *Schau v. Morgan,* 241 Wis. 334, 6 N. W. (2d) 212. From the undisputed corporate record it appears that neither the resolution to authorize Stoiber's contract nor the resolution to authorize Miller's contract was supported by a disinterested majority of the defendant's board of three directors. Instead it is obvious that their attempted adoption was by reciprocal votes, and consequently there is no necessity for a trial of any issue of fact in that respect.

Whether contracts for more favorable salaries or terms of employment for directors of a corporation can be authorized by their reciprocal votes has apparently not been involved in any action in this court. It is, however, well established that, —

"Directors of a corporation occupy a position of trust and confidence and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them. The directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders. Any participation by them in contracts dealing with matters of corporate interest which is antagonistic to their free and impartial discharge of official duties is denounced by the law, unless all of the stockholders with full knowledge assent thereto." *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961.

And in *Federal Mortgage Co. v. Simes,* 210 Wis. 139, 149, 245 N. W. 169, we stated,—

"It is apparent from what has been heretofore stated that four of the five directors were motivated entirely by a consideration of their own interests, and acted in accordance with their own interests, rather than the interests of the corporation. It is one thing for a stockholder or director to deal with a corporation in a transaction in which he does not represent

the corporation. Even in such cases the transaction will be closely scrutinized to see that no advantage has been taken of the corporation. But quite a different principle applies where a director represents both himself and the corporation in such a transaction. In the latter situation it does not matter whether the transaction results in injury to the corporation or not. In all such cases the contract is voidable on the part of the corporation simply because of the dual interest of the director."

The rules and reasons therefor stated in the *Timme* and *Federal Mortgage Co. Cases, supra,* are likewise applicable to contracts fixing more favorable salaries or terms of employment of directors by their reciprocal votes. As stated in 175 A. L. R. 592, 593,—

"The rule which forbids a director of a corporation from casting the vote essential to the adoption of a resolution fixing his own salary is applicable to the situation in which the salaries of two or more directors are to be fixed and, in voting, the interested directors act in co-operation, each voting for the resolution fixing the salary of another. . . . The reasoning behind the rule seems to be that each director would, as a rational human being, vote in favor of salaries for the others in the expectation that they would in turn vote for him and that therefore they would be casting their votes in their own interests and not in the interest of the corporation."

And in Ballantine, Corporations (1946 rev. ed.), p. 190, sec. 74, it is stated:

"A corporation is not liable, as a general rule, for services rendered by directors on special contracts authorized by the votes of interested directors. It has generally been held that where various directors are interested in the common object of procuring a salary or a salary increase for each of them as officers, the device of passing several resolutions for each instead of one joint resolution for all will not be effective. The mutual back-scratching or reciprocal voting invalidates the action as to each."

These rules are based on the decisions in *Sagalyn v. Meekins, Packard & Wheat, Inc.,* 290 Mass. 434, 195 N. E. 769; *Mallory v. Mallory Wheeler Co.* 61 Conn. 131, 23 Atl. 708; *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631; *Angelus Securities Corp. v. Ball,* 20 Cal. App. (2d) 423, 67 Pac. (2d) 152. See also *Davids v. Davids,* 135 App. Div. 206, 120 N. Y. Supp. 350.

The rules thus stated are applicable and controlling in the case at bar. Therefore the adoption of the resolutions in question by the reciprocal votes of the directors was void and ineffectual to authorize the making of the contracts in question, and in so far as that issue is involved in this action the defendant will be entitled to an adjudication to that effect.

However, it appears from matters stated in the pleadings, affidavits, deposition, and other matters in the record that there is a controversy between the parties as to whether or not plaintiff, while in defendant's employment, committed acts of misconduct because of which defendant made charges against him, or whether defendant wrongfully made such charges and without cause discharged plaintiff and terminated his employment in February, 1949, and thereby caused substantial damages to plaintiff; and whether there is due and and owing from defendant to plaintiff unpaid money for the month of February, 1949, in the amount of $500 or for salary up to the time the discharge of plaintiff was ratified or approved by subsequent action by the board of directors or at a meeting of the stockholders of defendant on May 25, 1949. Because of issues in respect to said remaining controversies, the judgment must be reversed and the cause remanded for the trial of said issues.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with the opinion.