ERNEST H. BERGER AND ESTHER H. BERGER, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85470, 85471, 85472.   Filed March 6, 1962.

*Arthur Magidson, Esq.*, for the petitioners.
*William J. Wise, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the petitioners' income tax for the year 1956 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Ernest H. Berger and Esther H. Berger | 85470 | $744.66 |
| Elmer H. Kelling and Alma Kelling | 85471 | 1,194.23 |
| Alan E. Kelling and LaVonne M. Kelling | 85472 | 188.92 |

The issue in these consolidated cases is whether certain amounts originally received by petitioners as salaries from a corporation and subsequently repaid to the corporation may be deducted by petitioners.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are herein included by this reference.

Ernest H. and Esther H. Berger, husband and wife, are residents of Milwaukee, Wisconsin. They filed a joint Federal income tax return for 1956 with the district director of internal revenue, Milwaukee, Wisconsin. Elmer H. and Alma Kelling, husband and wife, are residents of Wauwatosa, Wisconsin. They filed a joint Federal income tax return for 1956 with the district director of internal revenue, Milwaukee, Wisconsin. Alan E. and LaVonne M. Kelling, husband and wife, are residents of Wauwatosa, Wisconsin. They filed a joint Federal income tax return for 1956 with the district director of in-

---

[1] Proceedings of the following petitioners are consolidated herewith: Elmer H. Kelling and Alma Kelling, Docket No. 85471, and Alan E. Kelling and LaVonne M. Kelling, Docket No. 85472.

ternal revenue, Milwaukee, Wisconsin. Ernest, Elmer, and Alan will hereinafter sometimes be called the petitioners.

Marlan Investment Company (hereinafter called Marlan) is a Wisconsin corporation. Its business is ownership and management of real estate, all of which is rental property, and other investments. During the years 1953 to 1957, inclusive, all of the stock of Marlan was owned by the following individuals:

|  | Shares |
|---|---|
| Elmer H. Kelling | 130 |
| Marjorie Kelling Maschman | 60 |
| Alan E. Kelling | 60 |
| Ernest H. Berger | 16 |
| Total | 266 |

Marjorie and Alan are the children of Elmer H. Kelling. Ernest H. Berger is not related and is an employee of other business enterprises of Elmer H. Kelling.

During the years 1953 and 1954 the directors of Marlan authorized the payment of salaries to its officers and directors as follows:

|  | 1953 | 1954 |
|---|---|---|
| Elmer H. Kelling, president | $3,600 | $3,600 |
| Ernest H. Berger, secretary | 3,600 | 3,600 |
| Alan E. Kelling | 1,050 | 1,200 |
| Marjorie Kelling Maschman | 1,050 | 1,200 |

These amounts were actually paid and received by the above individuals in the years indicated. Elmer H. Kelling and Ernest H. Berger were president and secretary, respectively, of Marlan in the years 1952 through 1957. Elmer H. Kelling, Ernest H. Berger, Alan E. Kelling, and Marjorie Kelling Maschman constituted the entire board of directors of Marlan during the years 1952 to 1957, inclusive.

In 1956 the respondent audited the returns of Marlan for the years 1953 and 1954 and took the position that the salaries paid to the above individuals were in excess of reasonable salaries for services performed and the full amount should not be allowed as a deduction to Marlan. As a result of that audit and a subsequent conference the following amounts originally authorized as salaries were disallowed as deductions:

|  | 1953 | 1954 |
|---|---|---|
| Elmer H. Kelling | $1,200 | $1,200 |
| Ernest H. Berger | 1,200 | 1,200 |
| Alan E. Kelling | 450 | 600 |
| Marjorie Kelling Maschman | 450 | 600 |

These disallowances were agreed to by Marlan on December 19, 1956.

On December 20, 1956, the four directors of Marlan convened in a special meeting of the board. The minutes of the meeting are, in part, as follows:

Mr. Elmer Kelling called the meeting to order. He then explained that the internal revenue department had made an audit of our records for the years 1953 and 1954, and that as a result of this audit and a conference with Mr. Margel and Mr. Terres on December 18th all salaries would be disallowed except the following:

| | |
|---|---|
| Elmer H. Kelling | $2,400.00 per year |
| Ernest H. Berger | 2,400.00 per year |
| Alan Kelling | 600.00 per year |
| Marjorie Maschman | 600.00 per year |

After a discussion of the problem it was resolved to demand that each officer and director return to the company all salary payments made to the above during 1953 and 1954 in excess of the amounts allowed.

Mr. Kelling further reported that all salaries paid in 1955 would be allowed by the internal revenue department.

It was then resolved to pay no salaries for the month of December 1956, but to approve the salaries already paid, which are:

| | | | |
|---|---|---|---|
| Elmer H. Kelling | $2,750.00 | Alan Kelling | $1,650.00 |
| Ernest H. Berger | 2,750.00 | Marjorie Maschman | 1,650.00 |

It was further resolved to set the salaries for 1957 as follows:

| | | | |
|---|---|---|---|
| Elmer H. Kelling | $3,000.00 | Alan Kelling | $1,200.00 |
| Ernest H. Berger | 3,000.00 | Marjorie Maschman | 1,200.00 |

On December 26, 1956, Elmer, Ernest, and Alan paid to Marlan, by check, the respective amounts of $2,400, $2,400, and $1,050, and these amounts were deposited by Marlan in its bank account.

By December 25, 1956, Elmer, Ernest, and Alan had received salaries for that year in the respective amounts of $2,750, $2,750, and $1,650, and Marlan had withheld income taxes from these salaries in the amounts prescribed by withholding tables. Marlan deducted in full on its 1956 income tax return the salaries paid to the above individuals.

In reporting on their income tax returns their salary income from Marlan in 1956 Elmer, Ernest, and Alan reduced the salary received by them by the amount of the payment made by each of them to Marlan on December 26, 1956. The net amounts reported on the 1956 income tax returns were as follows:

| | |
|---|---|
| Elmer H. Kelling | $350 ($2,750 minus $2,400) |
| Ernest H. Berger | 350 ($2,750 minus $2,400) |
| Alan Kelling | 600 ($1,650 minus $1,050) |

Respondent in his statutory notice of deficiency determined that the full amount of the salaries received by Elmer H. Kelling, Ernest H. Berger, and Alan Kelling were includible in their respective incomes for 1956 without any reduction for the amounts paid by them to Marlan.

OPINION.

Petitioners' first argument is that this is a so-called claim-of-right case. They cite *United States* v. *Lewis*, 340 U.S. 590, and *Healy* v.

*Commissioner*, 345 U.S. 278, and correctly state those cases hold that where moneys are received by a taxpayer under a claim of right and subsequently the taxpayer is required to restore the moneys, the amount of repayment may be deducted by the taxpayer from his gross income in the year of repayment.[1]

To invoke the claim-of-right doctrine petitioners would have to show that the payee, the corporation here, could have legally compelled restoration of parts of salaries paid in prior years. In *United States* v. *Simon*, 281 F. 2d 520, the taxpayers as partners received rentals from their wholly owned corporation. By written agreement in January 1944 they reduced the rent, retroactive to November 1, 1942, and agreed to make refunds of the amount of the reduction for 1943. In their 1943 returns they included rentals at the reduced amount. After stating that the issue, solely a question of law, was whether the taxpayers were "under obligation" to repay the amounts refunded, the court said:

> Taxpayers were undoubtedly motivated in entering into the agreement with the corporation to reduce the lease rentals in order to eliminate any future controversy with the Commissioner over excessive rentals. We fail to see any business purpose in making the modification agreement retroactive so as to provide for refunding of rentals already paid in a prior tax year. The sole reason, in our judgment, was to obtain a tax advantage either for the corporation, or taxpayers or both. This is not sufficient to justify the deduction claimed as payment of an "obligation" within the sense of claim of right. We agree with the decisions previously discussed which hold that no "obligation" arises from a voluntary agreement to repay monies which the taxpayer would otherwise have an absolute and unconditional right to retain.

> \*     \*     \*     \*     \*     \*     \*

> In our judgment, in the circumstances of this case, the resolution of the directors followed by the modification of lease agreement do not create an obligation recognizable under the "claim of right" doctrine and do not justify the deductions claimed here. The refund by taxpayers can only be regarded as a contribution to capital. Cf. Bratton v. Commissioner, 6 Cir., 217 F. 2d 486, 489; Carroll-McCreary Co. v. Commissioner, 2 Cir., 124 F. 2d 303.

In this portion of their argument petitioners seem to concede there must be the obligation to repay before the claim of right doctrine can be invoked. Indeed, at the trial petitioners' counsel stated petitioners' position was "if this was a voluntary payment to Marlan Investment Company, it would not be deductible against income. \* \* \* we take the position that it was \* \* \* compulsory \* \* \*." Petitioners seem to argue the element of compulsion was present because repayment could have been compelled under Wisconsin law, and as petitioners' counsel stated at the trial "it was compulsory because it had its origin in a conference between representatives of the Internal Revenue Serv-

---

[1] Cf. section 1341 of the Internal Revenue Code of 1954 which is only applicable if the amount involved exceeds $3,000.

ice and these officers at Marlan Investment Company on December 19, 1956 wherein * * * Marlan agreed to the disallowance of these salaries only upon condition that these refunds would be made by the officers and the officers could take these deductions on their 1956 tax returns."

Petitioners argue that under Wisconsin law the payment of compensation to officers who are also directors is voidable by the corporation, and therefore the repayment of the excessive compensation by the petitioners to the corporation was compulsory. We need not decide whether this is an accurate statement of Wisconsin law since, in any event, it would not apply to the facts of this case. All of the stock of the corporation was owned by Elmer H. Kelling (130 shares), Alan E. Kelling (60 shares), Marjorie Kelling Maschman (60 shares), and Ernest H. Berger (16 shares). These same parties constituted the entire board of directors and they authorized the payment to themselves in 1953 and 1954 the salaries which the respondent found to be excessive in part.

In *Figge* v. *Bergenthal*, 130 Wis. 594, 109 N.W. 581, a minority stockholder who for several years had acquiesced in the salaries paid to the corporation's majority stockholders in their capacity as executives, brought an action to have such salaries reduced. It appears from the findings of fact that the minority stockholder was one of three directors of the corporation and that the other two directors were the majority stockholders (husband and wife). It also appears that the disputed salaries had been "fixed by the board of directors." The Supreme Court of Wisconsin, after indicating that "These salaries have been annually allowed by all the stockholders including [the minority stockholder bringing the action]" said, in part, as follows:

All the stockholders, including [the minority stockholder], having voted to fix the salaries at $6,000 and $500 respectively, from 1888 down to the commencement of the action, [the minority stockholder] cannot now be heard in a court of equity on behalf of the corporation in an action to reduce them because of a personal grievance of his own. In Morawetz on Private Corporations, vol. 1 (2d Ed.), § 262, it is said: "There is, however, evident propriety in refusing to allow a shareholder to sue on account of a wrong which he has voluntarily acquiesced in and condoned, even although the corporation might sue for his benefit. The plaintiff under these circumstances would have no meritorious causes of complaint, and he would be allowed to share in the benefits of a recovery by the corporation, merely because it would be impossible to separate his interest from the interests of the other shareholders. If the remaining shareholders should subsequently acquiesce in the transaction, the corporation itself would be bound, and the entire cause of complaint be barred. Individual shareholders who have acquiesced should at least be disqualified from suing where the other shareholders and the company through its agents have taken no steps to assert its rights."

See 19 C. J. S. sec. 805, citing *Figge* v. *Bergenthal*, *supra*, for the principle that "Where the act of directors in fixing their own salaries as officers is ratified by all the stockholders, it is binding on the corpo-

ration and all the stockholders." To the same effect, see 5 Fletcher, Cyc. Corp., sec. 2177, where *Figge* v. *Bergenthal, supra,* is also cited.

The two Wisconsin cases cited by petitioners do not disturb the above rule. In *Stoiber* v. *Miller Brewing Co.,* 257 Wis. 13, 42 N.W. 2d 144, the Supreme Court of Wisconsin held that contracts for favorable salaries and terms of employment for the directors of the corporation, authorized by their reciprocal votes, were void and ineffectual. However, the court was careful to say that "Any participation by [directors] in contracts dealing with matters of corporate interest which is antagonistic to their free and impartial discharge of official duties is denounced by the law, *unless all of the stockholders with full knowledge assent thereto."* [2] (Emphasis added.) Similarly, in *Federal Mortgage Co.* v. *Simes,* 210 Wis. 139, 245 N.W. 169, the court, in indicating that a corporation could repudiate a certain contract made by its directors, pointed out that (1) the corporation had done nothing to ratify the contract and (2) the stockholders as a body knew nothing about the transaction.

There is no merit in petitioners' contention that their repayment to the corporation in 1956 of a portion of their 1953 and 1954 salaries was involuntary because of certain representations made to them by respondent's agents, who purportedly told petitioners that they would be entitled to deductions for such repayments. In *John D. Biggers,* 39 B.T.A. 480, 486, this Court stated that "the great weight of authority is that representations made by revenue agents or collectors are not binding on the Government." While these representations may have motivated the repayment of the portions of the salaries regarded as excessive by respondent's agents, this does not mean that the decision taken by the petitioners to make the repayments was not a voluntary one. See *United States* v. *Simon, supra.*

We hold the repayment in 1956 was voluntary. It did not give rise to any deduction under the "claim-of-right doctrine."

This case is much like *Estate of Lloyd E. Crellin,* 17 T.C. 781, affd. 203 F. 2d 812. There a personal holding company, organized under California law, had on hand in 1946 certain long-term capital gains, and the directors of the corporation, upon being advised by a certified public accountant that unless the capital gains were distributed they would be taxable to the corporation as personal holding company income, declared and paid to the stockholders in June 1946 a dividend approximate in amount to the capital gain. Later in the year the

---

[2] The *Stoiber* case was decided in 1950. In 1951 the Wisconsin Legislature adopted a statute providing that "Unless otherwise provided in the articles of incorporation or bylaws, the board of directors, by the affirmative vote of a majority of the directors then in office, and irrespective of any personal interest of any of its members, shall have authority to establish reasonable compensation of all directors for services to the corporation as directors, officers or otherwise, or to delegate such authority to an appropriate committee." Wis. Stat. Ann. sec. 180.31.

directors learned that the advice of the accountant was erroneous and they adopted a resolution on December 28, 1946, rescinding the dividends and demanding that they be returned. The stockholders repaid the dividends to the corporation prior to December 31, 1946. Respondent determined that the dividends received by the stockholders constituted gross income to them and that no reduction of gross income was allowable because of the subsequent repayment in the same year to the corporation. This Court, after indicating that under California law a dividend which has been lawfully declared and paid could not be rescinded by the corporation without the consent of the stockholders, stated that "the directors were without power or authority to rescind [the dividend] and that its repayment to the corporation by the [stockholders] was without obligation and purely voluntary." We held that such a voluntary repayment did not give rise to any deduction.

In affirming this Court, the Court of Appeals for the Ninth Circuit stated that "for tax purposes, it is that which the holding company could have compelled, not that in which the stockholders were willing to acquiesce, which controls" and that the "consent given by [the stockholders] and relied upon by them as justifying 'rescission' was in fact no more than a voluntary payment by stockholders."

Petitioners make some argument on brief that in order to come under the claim-of-right rule it is not necessary that repayment be made under a "legal compulsion" but that it is enough if the repayment is made "in good faith and in the exercise of a sound business judgment." There is no merit in this argument. It can readily be seen such a "sound business judgment" standard would allow the employee-stockholders to contribute capital to their corporation by the mere label of excessive salary repayment, and secure deduction of the contribution on their own returns. The great weight of authority is that the payee must have at least the ability to legally compel the repayments before the repayments can be deducted by the payor. See *United States* v. *Simon, supra,* and cases there cited; *United States* v. *Lewis, supra.*

Petitioners make some argument that the repayments by petitioners in 1956 should be regarded as refunds of the 1956 salaries received by them in that year. This ignores the action taken by the board of directors, as reflected in the minutes, resolving "to demand that each officer and director return to the company all salary payments made * * * during 1953 and 1954 in excess of the amounts allowed." This and other evidence in the record clearly show that the petitioners repaid in 1956 a portion of the salaries received by them for prior years.

Finally, there is an argument that applies only to Ernest Berger, to the effect that he owned only 16 shares and was one of four directors, and "Hence he was in a position where obviously he was compelled to do whatever the others decided should be done." We believe that the principles discussed above apply equally to Ernest, a minority stockholder, and do not see how the repayment of a part of his salary to the corporation in 1956 was any less voluntary, within the meaning of Wisconsin law, than the other petitioners.

We hold that the repayments by the petitioners in 1956 to their corporation of a portion of their salaries for prior years were voluntary in nature and therefore not deductible by them in 1956.

*Decisions will be entered for the respondent.*