Paul H. Pazery and Anne Marie Pazery v. Commissioner.
Pazery v. Commissioner
Docket Nos. 3215-62, 4112-62.
United States Tax Court
T.C. Memo 1963-345; 1963 Tax Ct. Memo LEXIS 1; 22 T.C.M. (CCH) 1814; T.C.M. (RIA) 63345; December 31, 1963
*1 Held, that the petitioners are not entitled to deductions for depreciation on or amortization on account of an atomic bomb shelter. Held, further, that expenses incurred in connection with a proposed transaction, including travel expense on a trip to France, constituted deductible ordinary and necessary expenses paid or incurred for the production of income under section 212 of the Internal Revenue Code of 1954. Paul H. Pazery, pro se, R.D. #1, Phoenixville, Pa. Dennis C. Deberry, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1959 and 1960 in the respective amounts of $590.82 and $268.10. The issues are: (1) whether the petitioners are entitled to deductions for each of the years in question for depreciation upon a bomb shelter and (2) whether for the taxable year 1959 the respondent erred in disallowing a claimed deduction of $896.09 which includes travel expense incurred on a trip to Europe. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. The petitioners are husband and wife, whose residence during *3 the years in question was at R.D. #1, Phoenixville, Pennsylvania. They filed joint Federal income tax returns for those years with the district director of internal revenue at Philadelphia, Pennsylvania. Hereinafter Paul H. Pazery will be referred to as the petitioner. During the years in question the petitioner was employed full time by Wyeth International Limited, Radnor, Pennsylvania. In 1956 the petitioner commenced building on his residence property a 5-room underground atomic bomb shelter. At the time of the hearing the shelter was practically completed. It is connected with the petitioner's residence and also has an exit in the garden. The shelter is built of concrete, about 700 tons of concrete being used, and has an indefinite physical life. [1] Altogether the petitioner has spent about $16,000 in the construction of the shelter. By the end of 1960 he had spent in its construction at least $7,424.70. In building the shelter the petitioner had no profit motive whatever and has received no income directly from the shelter. It was constructed primarily for the protection of himself *4 and his family. The petitioner had concluded after the bomb tests in the Pacific in 1954 that it was only a question of time until missiles could deliver a bomb and he thought it necessary to do something to protect himself and his family in case of necessity. He tried, without success, to get his neighbors to construct a community shelter. During the years in question the petitioner held the position of technical director of civil defense for Chester County, Pennsylvania. He was so appointed, at a time not disclosed, by the civil defense director of Chester County. The position carried no remuneration and during the years in question there was no provision for reimbursement of any expenses incurred in carrying out the duties of that position. The petitioner's position was run on an informal basis. His duties apparently consisted of holding classes on civil defense throughout the county, at the request of the county civil defense director. In 1959 the petitioner wrote and published a book on how to build and equip an atomic bomb shelter. He sold copies of this book for $1.25 each and also gave away copies to persons in the classes which he conducted. When he wrote the book the *5 petitioner did not have a profit motive, but intended only to be reimbursed the cost thereof. Actually he was reimbursed his cost and has made some money from sales of the book. His purpose in writing and publishing the book was to contribute to the defense effort by helping other people build shelters. In the joint income tax return for each of the years in question the petitioner claimed as a deduction $1,000 as depreciation sustained on the atomic bomb shelter. The respondent, in computing the deficiencies, disallowed these claimed deductions. In 1959 the petitioner was informed by a friend named Hauswald, who lived in Paris, that a French firm by the name of Bugatti, which was located at Molsheim, France, which previously had manufactured a racing car, was desirous of attempting to start building another car, but needed capital. Hauswald, who had been a manager of a branch of the Bugatti firm, asked the petitioner if he could come to France to consult with him as to means of obtaining American capital. The petitioner agreed, took his regular vacation and an extra week of vacation from Wyeth International Limited and went to France in 1959 to see what could be done. Most *6 of the negotiations were carried on in Paris, France, but the petitioner also traveled to Molsheim to obtain information concerning the value of the plant and the net worth of the company. The petitioner contacted the City Investment Company of New York, which became interested in purchasing control of the Bugatti Company, and started active negotiations, including negotiations to obtain a loan of about $1,000,000 to finance the purchase. The petitioner several times met with representatives of the City Investment Company in New York in regard to the proposed transaction. However, due to diverse ownership of the shares of the Bugatti Company, it was not possible to obtain such control, and at the time of the trial of this case the matter was still pending, with the possibility that when one of the owners, a minor, should reach maturity (which would occur in a short time), the deal might be consummated. The petitioner had an oral agreement with City Investment Company under which he would receive 1% of the amount involved if the deal went through, but would receive no reimbursement if it did not. The petitioner has never received any reimbursement from the City Investment Company *7 except for a $65 telephone bill. The petitioner went to France alone and returnd alone. His wife and family also went to France prior to the time that he made his trip, and returned to the United States after he had returned. The Bugatti matter did not occupy all of the petitioner's time while he was in France. He met his family there, but was with them only a few days. He also visited relatives while there. However, his basic purpose in going was to assist in the Bugatti transaction in the expectation of earning income. In connection with the transaction the petitioner incurred traveling and other expenses as follows: Round trip, Philadelphia Paris (airplane
fare)
$527.60
Expenses in France (railroad fare,
hotels, etc.)
217.49
Phone calls, telegrams to France, corre-
spondence, etc.
80.00
3 trips to New York
71.00
Total
$896.09 In the joint return for the taxable year 1959 the petitioner claimed the amount of $896.09 as an itemized deduction for "Journey * * * to negotiate Bugatti loan." The respondent in the notice of deficiency disallowed this claimed deduction. Opinion The first issue is whether the petitioners are entitled, for each of the years *8 in question, to a deduction for depreciation, under section 167 of the Internal Revenue Code of 1954, [2] on their atomic bomb shelter. In their return for each of the taxable years 1959 and 1960 the petitioners claimed a deduction of $1,000, which was disallowed by the respondent. Under the statute depreciation is allowable with respect to only property used in the trade or business or property held for the production of income. It is clear from the petitioner's testimony that the shelter was not constructed by him with a view to the production of income in any manner, and, in fact, it did not produce income. Rather, we think that the evidence, including the testimony of the petitioner, [3] establishes that the petitioner's primary intention in constructing the shelter was to protect himself and his family in the event of an *9 atomic war, and we have so found as a fact. It cannot be considered that the shelter was property used in the trade or business, within the meaning of the statute. It certainly had no connection with the petitioner's regular trade or business as an employee *10 of Wyeth International Limited. The petitioner did testify, in effect, that he felt it incumbent upon himself to have a bomb shelter in connection with his position as technical director of civil defense for Chester County, Pennsylvania. He stated that he felt that he should have a shelter himself inasmuch as he was urging others to build shelters, and that he also felt that in the event of an atomic attack he would need a shelter for himself in order to communicate with, and maintain liaison with, any survivors. He also stated that he felt that it was a part of his duty to write and publish a book on how to build and equip an atomic bomb shelter. While the petitioner's activities in connection with the civil defense program constituted a commendable public service, they did not qualify as the carrying on of a trade or business within the contemplation of the statute. The term "business" has been defined as "that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Co., 220 U.S. 107; and Black's Law Dictionary, 3rd edition, p. 260. The petitioner's position as technical director of civil defense carried no *11 remuneration, and none of the activities were carried on for profit. It is our conclusion, therefore, that the petitioner is not entitled to a deduction for depreciation on the bomb shelter. The petitioner has raised the question of whether he should have been allowed a deduction under section 168 of the Internal Revenue Code of 1954, which deals with the amortization of emergency facilities. That section provides for deductions over a 60-month period, in lieu of depreciation, for amortization of the basis of an emergency facility, but only if, prior to the filing of the return, the proper certifying authority has certified such facility as being necessary in the interest of national defense. The petitioner did not obtain such a certificate of necessity. He testified that he did not obtain such a certificate because, in answer to his inquiry with respect to whether a certificate of necessity was required, the district director of internal revenue at Norristown, Pennsylvania, by letter of December 16, 1959, advised him that a certificate of necessity "is not sufficient substantiation for the deduction of an atomic bomb shelter since the construction of such *12 shelter is a non-deductible personal expense." The petitioner now claims that he was thus given erroneous information which influenced him to allow the time to expire within which he might have obtained a certificate of necessity which would permit him the benefit of amortization deductions. The petitioner did not file a brief, but at the trial stated that in view of this"the purpose of this suit is to endeavor to obtain redress." Irrespective of whether the petitioner would be entitled to a certificate of necessity with respect to the bomb shelter, which we do not here consider, it is clear that there is no basis upon which this Court can hold that the petitioner is entitled to deductions for amortization of the bomb shelter since he did not obtain such a certificate. Nor do we find it necessary to consider whether the advice given to the petitioner by the district director was erroneous. Even if it was and even if the petitioner relied upon such advice to his detriment, we may not grant the petitioner any relief. In this connection it may be pointed out that this Court does not have general equitable jurisdiction; that in any event the doctrine of estoppel does not apply against *13 the Government; and that the great weight of authority is to the effect that representations made by revenue agents or collectors are not binding on the Government. See John D. Biggers, 39 B.T.A. 480, and cases cited therein. See also Ernest H. Bergen, 37 T.C. 1026. The respondent disallowed as a deduction the amount of $896.09 which the petitioner claimed as an expense in connection with his activities to obtain financing for the Bugatti Company or to assist City Investment Company in obtaining control of that company. The respondent on brief takes the position that the petitioner has not substantiated the expenditures and that in any event any amount expended in reality constituted nondeductible vacation expenditures or, alternatively, that the expenditures were incurred by the petitioner to obtain income by the creation of some new interest, and, therefore, constituted nondeductible capital expenditures, citing Morton Frank, 20 T.C. 511, and Frank B. Polachek, 22 T.C. 858. We are satisfied from the evidence that the petitioner expended the amounts in question, that the trip to France was made primarily for the purpose of either *14 obtaining financing for the Bugatti Company or for the purpose of accomplishing an acquisition by the City Investment Company of control of the Bugatti Company, and that none of the expenditures in question was of a personal nature. The petitioner was not acting as principal, but for others, and anticipated the receipt of income in the event of a successful outcome of the transaction. The petitioner had an oral agreement with City Investment Company under which he was to receive 1% of the amount involved in the transaction if the City Investment Company succeeded in purchasing control of the Bugatti Company. The record is not clear as to whether the petitioner had made this arrangement before or after he went to France. As the transaction originated, the petitioner was attempting to locate capital for the Bugatti firm, and later the City Investment Company counter-proposed to buy control of the Bugatti Company. But, even if the petitioner's arrangement with City Investment Company occurred subsequent to his trip to France, we think the evidence establishes that the petitioner's basic purpose in making the trip was to render services with the expectation of earning income. He so testified *15 and we have no reason to doubt his testimony. We therefore conclude that the expenditures involved were not vacation expenses, even though the petitioner's family was in France at the same time and even though the petitioner spent some time with his family and also visited other relatives. It is therefore our conclusion that the amount of $896.09 is deductible as ordinary and necessary expenses paid or incurred for the production of income, under section 212 of the Internal Revenue Code of 1954, which provides in part as follows: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income * * *. The effect of this provision of the statute is to provide for a class of non-business deductions co-extensive with the business deductions allowed by section 162(a) of the 1954 Code, [4] except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for *16 the production of income or in the management or conservation of property held for the production of income. See Bingham's Trust v. Commissioner, 325 U.S. 365. The fact that the transaction has not as yet been consummated, and that no income has actually been derived by the petitioner therefrom, does not defeat the deduction in the year in question. In this connection it is noted that section 1.212-1 of the Income Tax Regulations provides that the term "income" as used in this section includes not merely income of the taxable year, but also "income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years." *17 We have carefully examined the cases cited by the respondent [5] as well as section 1.212-1(f) of the Income Tax Regulations, which provides that among expenditures not allowable as a deduction under section 212 are "those paid or incurred in seeking employment or in placing oneself in a position to begin rendering personal services for compensation." However, we think the cited cases and the regulations are not applicable here. The petitioner did not make the expenditures to acquire an interest in any property or business or to place himself in a position to begin rendering personal services for compensation. From the evidence it appears to us that the expenditures were made in actually rendering services, either to the Bugatti Company or to City Investment Company, for the purpose of earning income, albeit his right to income was contingent upon a successful consummation of the transaction. *18 Decisions will be entered under Rule 50. Footnotes
1. The petitioner testified that the life expectancy of the shelter was "'easily" 100 years.↩
2. Section 167 provides in part as follows: (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income.↩
3. The petitioner testified in part: As a matter of fact, when I started building it I just saw it as a horrible expense. My wife and I were saving up some money to buy a farm, eventually, which had been the ambition of both of us and when I heard the results of the March 1, 1954 test in the Pacific and the fate which had befallen fisherman aboard the unfortunate Dragon, I said to my wife, "We came over from Europe -" We figured we had the rest of our lives away from all the quarrels and argument in Europe and "here we go again." Now it is only a question of time to have the missiles to carry the bombs here and we have to build again and we have to do something to protect ourselves in case of necessity. At the time I was interested in Civil Defense and I tried to convince a few people that it was time to do something before it was too late. I went around to see the neighbors to build a community shelter but I had no success.↩
4. Section 162(a) provides for the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses (including amounts expended for meals and lodging) while away from home in the pursuit of a trade or business. In this connection section 1.162-2(b) of the Income Tax Regulations↩ provides that if a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and from such destination are deductible if the trip is related primarily to the taxpayer's trade or business. Section 274 of the Code is not applicable to the taxable years here involved and hence we are not concerned with allocating any portion of the amount expended as non-deductible personal travel expense.
5. In the Frank case it was stated that there is a basic distinction between allowing deductions for the expense of producing or collecting income, in which one has an existent interest or right, and expenses incurred in an attempt to obtain income by the creation of some new interest.↩